JOHANNA HEFFERNAN, Respondent, v. SUPREME COUNCIL AMERICAN LEGION OF HONOR, Appellant.

**St. Louis Court of Appeals, April 15, 1890.**

1. **Pleading:** VARIANCE. When the petition in an action for the recovery of benefits, in the nature of insurance, alleges an unconditional contract to pay such benefits, while the evidence establishes

only a contract to pay on the performance of certain conditions precedent, this difference constitutes only a variance, and such variance is not material when it could not have misled the defendant.

2. **Benevolent Associations: MUTUAL BENEFIT INSURANCE.** Provisions in the by-laws of a benevolent association, requiring a certain form of notice of assessments for mutual benefit insurance to be given to members under a corporate or official seal, and providing that no paper issued by authority of the association should be official unless thus sealed, may be waived. And the evidence is sufficient to warrant a finding of such a waiver when it establishes an unbroken usage for years on the part of the association to give notices of assessments not thus sealed, and on the part of all of the members of the association, including the beneficiary in the case in hand, to treat such notices as sufficient.

3. ——— : ———. The fact that the weight of the evidence in an action at law is with the appellee will not prevent a reversal of the judgment appealed from, when there was prejudicial error in the trial of the cause.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED.

*F. H. Bacon*, for the appellant.

*Thomas A. Russell*, for the respondent.

ROMBAUER, P. J., delivered the opinion of the court.

The petition states that the defendant is a benevolent corporation, and that one Martin C. Heffernan, the plaintiff's son, became its beneficiary member in February, 1884, and received from it a benefit certificate, whereby it agreed to pay two thousand dollars to the plaintiff on the death of the said Martin C. Heffernan; that Martin C. Heffernan continued in defendant's order until the twenty-eighth of June, 1889, when he died, a member of said order, in good standing, and that

the defendant thereby became bound to pay to the plaintiff the said sum of two thousand dollars, but, upon demand, refused to so do, wherefore the plaintiff sues, etc.

The answer, after setting up the laws of the defendant's order, alleges that the certificate issued to Heffernan was a conditional promise to pay the sum therein named to the beneficiary, only on the condition that Heffernan should comply with all the laws, usages and requirements of the order, and should be a member, in good standing, therein at the time of his death. The answer then proceeds: "That said Martin C. Heffernan did not faithfully comply with all the laws, usages and regulations of said order, and did not punctually pay all assessments for which he was liable, and was not, at the time of his said alleged death, a member, in good standing, in said order, in that said Heffernan did not pay, within the time prescribed by the laws of said order, nor at any other time, certain assessments, required by said order and its laws, and paid by the other members of said LaFayette Council and said order, to-wit: Assessment number 153, called May 1, 1889, and payable on or before June 1, 1889, and also assessment number 154, called May 1, 1889, and payable on or before June 15, 1889, whereby, under the said laws, said Heffernan became suspended from said order, and, under his said contract, and the laws and rules of said order, the said benefit certificate became null and void, and all rights thereunder were forfeited and lost."

The reply was, in substance, a general denial of the affirmative defense. The cause was tried by the court without the intervention of a jury, the trial resulting in a judgment for the plaintiff.

The errors assigned on this appeal are that the court erred in admitting evidence of a conditional promise in support of a petition which charged an absolute promise; that the court erred in admitting

irrelevant evidence offered by plaintiff, and further erred in its declarations of law.

Touching the first assignment, we have to say that the petition, if properly framed, should have charged a conditional promise, as the promise shown by the proof was conditional, but that the evidence offered was at most a variance, as distinguished from a failure of proof. It could not operate as a surprise to the defendant, since the defendant, in its own answer, with minute details, set out the entire contract between itself and Heffernan, with all its conditions; and, where the answer thus supplements the petition, how can the defendant claim that the proof offered should not be received, it being strictly within the issues framed by the pleadings? *Carson v. Cummings*, 69 Mo. 325, cited by the defendant, holds that one cannot sue on a contract of sale, and then recover upon evidence of trover or conversion, and *Feurth v. Anderson*, 87 Mo. 354, likewise so cited, holds that one suing for the purchase price of certain articles cannot recover by showing a sale of other and wholly different articles. These are familiar cases, illustrating an entire failure of proof. Nor is an amendment allowed in such cases, because a party, even under the liberal provisions of our code, cannot substitute, by amendment, one cause of action for another. *Scovill v. Glasner*, 79 Mo. 449. Here the cause of action was the benefit certificate; the answer admits its issue to Martin C. Heffernan, and endeavors to avoid its effect by stating that the prompt payment of assessments was a condition precedent to his continuing a member in good standing; that he failed to pay assessments 153 and 154, and thereby became suspended, and that the benefit certificate became null and void. We are justified in holding, on the authority of *Mulroy v. Knights of Honor*, 28 Mo. App. 467, and cases there cited, that the defendant, by contesting its liability on the sole ground that the deceased was under valid suspension at the

MARCH TERM, 1890. 609

Heffernan v. Supreme Council Amer. Legion of Honor.

time of his death for failure to pay these assessments, has narrowed the issues to the trial of that fact.

Upon the trial, the plaintiff gave in evidence the benefit certificate, proved the death of Martin C. Heffernan, and that she was the beneficiary named in the certificate, and further proved that notice of death and preliminary proofs thereof were waived by the defendant. This, under the issues framed, was sufficient to make out a *prima facie* case, and the defendant's demurrer to the evidence was properly overruled.

The defendants introduced in evidence the application of Martin C. Heffernan for admission into the order, forming by its terms part of the contract between the parties, and containing among other things the following statement : "I agree to make punctual payment of all dues and assessments for which I may become liable, and to conform in all respects to the laws, rules and usages of the order, now in force or which hereafter may be adopted by the same." The defendant next offered in evidence the code of laws governing the order. It was admitted that assessments 153 and 154 were duly called on May 1, 1889, by the defendant corporation from the members of the council to which Heffernan belonged. It further appeared from these laws that the same calls are made at the same time on all subordinate councils. The following provisions of the laws have direct bearing on the matters in controversy :

"Sec. 6. Notice of all assessments levied shall be dated on the first day of the month, and whenever the condition of the supreme treasury shall make it necessary to call two assessments, the first shall be due on the first, and the second on the fifteenth day succeeding the date of the call."

"Sec. 8. The subordinate council having been notified by the supreme secretary that an assessment

has been laid, it shall be the duty of the collector to at once notify every member liable to an assessment. This assessment notice shall bear the official stamp of the collector, or the seal of the council, and shall be in accordance with a form prescribed by the supreme council, and its date shall be the same as that of the notice received from the supreme secretary. Each member shall pay the amount due on the notice of the collector within the time prescribed in section 6 of this law, and any member failing to pay such assessment within said time shall stand suspended from the order and all benefits therefrom. The collector shall immediately notify the commander and secretary of the date of such suspension, and the commander shall announce the suspension and the date thereof at the next meeting of the council.

### "OFFICIAL SEAL AND STAMP.

"This council shall, within sixty days from the date of its institution, procure and adopt an official seal, an impression of which shall be deposited with the supreme and grand secretaries. After this council shall have been instituted sixty days, no document or paper issued by its authority shall be official, unless an impression of its seal is affixed thereto; provided, that the collector may have an official stamp, which may be affixed to all papers issued by said collector, instead of the seal."

The evidence tended to show the following facts: Martin C. Heffernan lived with his mother at 1924 Cass avenue, and his name and address were contained on the defendant's books. The plaintiff ( the mother of Heffernan ) and his sister were members of the same order, although members of different councils, and they usually paid Heffernan's assessments. For a long time anterior to the decease of Heffernan, who had been

a member of the council for years, two assessments were called each month, and all assessments, except numbers 153 and 154, were duly paid, either by Heffernan, or by his mother or sister for him. Notice of all these assessments was given to the members of the council by mail, sometimes inclosed in an envelope, but mostly by postal cards, directed to their places of residence, but no notice ever sent contained either the official stamp of the collector, or the seal of the order. They all contained a mark of the emblems of the order, being a ten-pointed maltese cross with an angel in the center. The notices in controversy were in the following form:

{ EMBLEM. } "LaFayette Council, No. 392, A. L. of H., May 1, 1889.

"*Companion*: You are hereby notified that assessments numbers 153 and 154 are now due and payable.

"H. C. Elbrecht,

"Collector, 1823 Benton Street.

"If assessment number 153, amounting to forty-eight cents, is not paid on or before June 1, 1889, you stand suspended.

"If assessment number 154, amounting to forty-eight cents, is not paid on or before June 15, 1889, you stand suspended."

There was evidence tending to show that the postal card containing this notice was mailed in due time, directed to Martin C. Heffernan, 1924 Cass avenue, but a card, which purported to be the identical card, was produced by the plaintiff, when examined as a witness for defendant, bearing the government post stamp of May 4, and addressed to 1922 Cass avenue, presumably an adjoining house, and the plaintiff in that connection testified that she "got it under her door after the death of her son," which, as above stated, occurred June 28, 1889.

This being in substance all the evidence that has any material bearing on the points of law arising on the record, the court at the instance of the defendant gave the following instruction :

"1.  The court declares the law to be that, under the laws of the American Legion of Honor, no action of the council is required to perfect the suspension of a member, but that, by the failure to pay an assessment of which lawful notice has been given, within the time required by the laws of the order, such member by the mere fact of the non-payment stands suspended from the order, and, dying while so suspended, the beneficiary cannot recover on the benefit certificate of the member so suspended."

This instruction was a correct declaration of law, and we mention this fact merely because the plaintiff has argued the case here on the theory that not only the fact of suspension, which is worked by non-payment of dues, but also its announcement in council, as provided by section 6 above quoted, were essential to work a forfeiture of benefits, which theory is untenable.

The defendant asked the following declaration of law among others :

"8.  The court declares the law to be that, if it finds from the evidence that at the time of his death Martin C. Heffernan had failed to pay to LaFayette Council of the American Legion of·Honor any assessment or assessments, for which he was liable, within the time limited for the payment of the same by the laws of defendant's order, then said Martin C. Heffernan at the time of his death was not a member in good standing of said order, and plaintiff cannot recover."

The court declined to give the declaration in that form, but gave it, by adding thereto after the word "liable" the words, "and of which he had been duly notified according to the laws of the order."  Other declarations of law asked by the defendant the court likewise modified, by requiring a notice according to

the laws of the order, as a condition precedent to a valid suspension. What the court meant by these modifications, and how as a trier of the facts it understood the applicatory law, is best shown by the following extract from the opinion of the very careful judge, who tried this cause, such opinion being embodied in the record before us. After referring to the laws of the order requiring each subordinate council to have a seal, and providing that no document or paper shall be official unless an impression of its seal is affixed thereto, the court says: "These are positive requirements of the law, which not only could the subordinate council not change by custom or usage, but it has no authority to alter it even by a solemn enactment; for it is the law enacted by the supreme council for the government of the subordinate council. In this case the trier of facts would be justified from the evidence in finding that it was the uniform usage of the council to send these notices by mail addressed to the members at the numbers given in the book. And if the notice had been in a form prescribed by the supreme council, and under the seal of subordinate council, or the official stamp of the collector, I think the evidence would justify the finding that the member was duly notified."

We have set out the facts of this case thus fully, because we deem the proposition of law involved of vital importance to associations of this class, which furnish a safe mode of insurance to a vast number of people of limited means, and which depend for their usefulness almost exclusively upon an intelligent view and application of their peculiar laws. That rights of members once acquired should not be forfeited except for causes clearly within the contemplation of the contract, we concede. On the other hand, it is essential that the rights of the aggregate society should not be frittered away by matters purely technical. If the view entertained by the trial court is to prevail, any number of members, although not only aware of the fact that

an assessment is payable, but also notified in due time in writing by the proper officers of the association of the time and place of payment required, and of the consequences of non-payment, may decline to pay all such assessments. Without giving the society any notice whatever of their ground of refusal, their beneficiaries may years afterwards in case of death recover out of a fund, to which the member has never contributed, simply because the notice was not under the seal of the order, or did not contain the collector's stamp. It must be borne in mind that, although in this instance the member died the same month in which he failed to pay these assessments, under the declaration of law made by the court the same result would follow, if he had died years afterward, and had paid no assessments whatever for years.

The trial court in its rulings relied upon *Siebert v. Supreme Council*, 23 Mo. App. 268, and *Stewart v. Supreme Council*, 36 Mo. App. 319. In the *Siebert case* there was no evidence of any service of the notice, and no evidence whatever of any waiver by usage or of custom as to the mode or form of notice prescribed. The naked question for decision was whether knowledge on part of a member, that an assessment had been laid, dispensed with proof of any notice, or in other words was conclusive evidence of notice. Judge LEWIS held that, upon these facts, a jury might infer that Mrs. Siebert did, or that she did not, receive the proper notice, without doing violence to the proofs, and that it is essential to our jury system, that jurors may adopt the most highly improbable of several hypotheses properly submitted to them, and yet their verdict must be judicially permitted to stand, however unsatisfactory to other minds,—thus deciding in effect that the jurors' failure to infer notice from knowledge was a finding against the weight of the evidence. In the *Stewart case*, we pointedly said that we cannot concede that, where the uniform usage of a society, with which all its

members are familiar, has given to the word "notify" a different meaning, personal notice is still indispensable. We also held in that case that there was evidence tending to show that the uniform usage of the society and its members dispensed with personal notice, and the weight of that evidence was a question for the jury. There was evidence tending to show a waiver on the part of Hugh Stewart of personal notice, and that question was one for the jury, as the contract was solely between him and the association. We are aware of no principle, which would enable us to distinguish between a waiver of the mode of service, and a waiver of the form of notice.

Now, in the case at bar, the testimony is uncontradicted that none of the notices ever given to any member of this council were in strict compliance with the laws of the order, in this, that none of them were either under the seal of the council or contained the collector's stamp, and it is equally uncontradicted that all the members not only of this council, but also of other councils belonging to the order, including the beneficiary herself, did for years treat these notices, as the notices and the only notices to which they were entitled, although they presumably knew that the laws of the order required a notice under seal, so that there was ample evidence of a question of waiver, and the court erred by withdrawing from its own consideration that question, as appears by its declaration of law.

If the court as a trier of the facts had found that no timely notice of any sort was given to Martin C. Heffernan of these two assessments, we would not be justified in disturbing its verdict; nor can we on the other hand sustain the verdict, because in our opinion the weight of the evidence is to that effect, since we cannot make a finding of facts upon conflicting evidence, and thereby usurp the province of the jury.

The views herein expressed lead to a reversal of the judgment. In remanding the case we may add that

evidence of a custom to induce suspended members to apply for reinstatement was irrelevant to the issues of this case, and should on the retrial be excluded. The same observation is applicable to the testimony of witness Elbrecht, touching a conversation between himself and one Sloan, which was mere hearsay. The admission of irrelevant evidence may have no effect whatever, when the cause is tried by the court, but may become highly prejudicial, when it is tried before a jury.

Reversed and remanded. All the judges concur.