HENSLER, Respondent, v. STIX et al., Appellants.

St. Louis Court of Appeals, May 16, 1905.

1. **ELEVATORS: Carriers of Passengers: Degree of Care.** Persons who operate elevators for the use of the public in stores and other buildings are treated as common carriers of passengers and are held to the exercise of the highest practicable care to prevent injury to passengers on such elevators.

2. ———: ———: ———. It is the duty of a passenger upon an elevator to use ordinary care to keep from getting hurt.

3. **PLEADING: Negligence: Elevators.** In an action for injuries received by a passenger on an elevator, by the premature starting of the elevator while plaintiff's dress was caught to the floor from which the elevator started and before it could be released, in order to recover on that ground of negligence, the petition should have averred that the operator of the elevator knew or ought to have known that plaintiff's dress was caught when he started the machinery.

4. ———: **Failure of Proof.** In an action for injuries received by the negligence of the defendant, where there is some evidence to prove the injury was due to the negligent act of the defendant alleged, the plaintiff could not be nonsuited on the ground of entire failure of proof.

5. ———: ———. If there is an entire failure to sustain the allegations of the petition stating an independent ground of recovery, or if the fact proved negatives the one alleged, it is a failure of proof and not a variance and the plaintiff's case, so far as it rests on the unproved allegation, must fail. (Section 798, Revised Statutes 1899.)

6. ———: **Immaterial Variance.** If there is an immaterial variance between the pleading and the proof, the court may direct the facts to be found according to the evidence, or order an amendment without cost. (Section 656, Revised Statutes 1899.)

7. ———: **Material Variance.** A material variance is one which has misled the opposing party to his prejudice (section 655, Revised Statutes 1899), and it is the duty of the party prejudiced by a material variance to satisfy the court by affidavit to that effect, so that the court may order the pleading amended on terms.

8. ———: ———. A party during a trial may object to evidence on the ground that it is irrelevant to the issues, or he may raise the question of variance after it is introduced; if he does neither, the trial court has a right to instruct on the evidence as introduced.

9. ———: ———. In an action for injuries received by a passenger on an elevator, where the petition alleged that the defendant was negligent on closing the door of the elevator on plaintiff's dress, so that it became entangled in the wheels, in carelessly leaving the wheels exposed and in starting the elevator while the plaintiff's dress was fastened, so as to throw her against the top and sides of elevator, thereby injuring her, while the proof showed that the operator of the elevator, after starting the elevator, saw the plaintiff's dress was fastened and that she was in a dangerous position, reversed it so that it suddenly shot upward and injured the plaintiff by her leg getting caught between the floor of the elevator and the edge of the ceiling of the floor above, this was but a variance and not a failure of proof, because the cause of action was based on the injuries received by the negligent handling of the elevator by the defendant's employee.

10. **NEGLIGENCE: Practice: Jury Question.** In an action received by plaintiff while a passenger on the defendant's elevator, where the evidence showed when the car started the plaintiff's dress was fastened to the floor from which it was leaving, and that on discovering the plaintiff was being lifted by that means, the operator reversed the car so that it started suddenly upward and injured plaintiff against the floor above, and the operator testified that it was impossible for him to stop the car without reversing the power which caused the upward movement, it was a question for the jury whether the elevator was handled with reasonable prudence after the operator saw the plaintiff's danger.

11. ———: **Proximate Cause.** The negligence which is the "proximate cause" of the injury authorizing a recovery, is not necessarily the "immediate cause," but the *culpable* act in the chain of causation nearest the injury; and unless, in such case, the reversal of the car was a careless act and caused the injury, the law will recur to the previous carelessness in causing the plaintiff's dress to be caught, as the proximate cause of the injury, though the later act, if not careless, was the immediate cause.

12. ——: ——: **Contributory Negligence.** In such case, the plaintiff was guilty of contributory negligence only in case she did not exercise ordinary care to keep her dress from catching in the floor, and in case her negligence caused it to catch, she could not recover, unless the operator of the elevator knew or by the exercise of high care, could have known, it was caught, in time to prevent the injury.

13. ——: **Contributory Negligence: Last Chance: Instruction.** An instruction, in such case, based upon the last chance rule and authorizing a recovery notwithstanding the "contributory negligence" of the plaintiff which would likely mislead the jury as to the effect on plaintiff's right in case she was guilty of contributory negligence, should not have been given.

14. **PRACTICE: Allegations and Proof: Instruction.** In an action for injuries received on account of the negligence of the defendant, where several acts of negligence are alleged and only some of them supported by the evidence, the right of recovery should be limited to a finding of such acts of negligence only as are supported by the proof, and an instruction authorizing recovery in case of finding any act of negligence on the part of the defendant caused the injury, is erroneous.

15. ——: **Evidence: Proposition to Settle.** In an action for damages on account of personal injuries, where the evidence showed that the defendant was paying the expenses of the plaintiff at the hospital, a proposition by the defendant to continue to pay for the plaintiff's board and medical attention in case she made no additional demand on account of her injuries, to which proposition the plaintiff made no reply, was not admissible in evidence for the purpose of showing a settlement of the demand although the plaintiff continued in the hospital at the defendant's expense.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED AND REMANDED.

*James A. Seddon* and *Robert A. Holland, Jr.,* for appellants.

(1) The court erred, in refusing to give, at the request of defendants an instruction in the nature of a demurrer to the evidence offered at the close of the plaintiff's evidence in chief, and offered again at the close of

all the evidence. This instruction should have been given because there was an utter failure on the part of the plaintiff to prove any of the allegations of negligence contained in her petition. The plaintiff specified several acts of negligence and was limited to such allegations, and could not recover for any negligence that was not alleged. Feary v. Railroad, 162 Mo. 75, 62 S. W. 452; McManamee v. Railroad, 135 Mo. 440, 37 S. W. 119. (2) The court erred in giving instruction numbered 1 asked by plaintiff. The said instruction was erroneous because it allowed the plaintiff to recover for any negligence on the part of the defendants. This was erroneous because the plaintiff had made specific allegations of negligence in her petition and was limited to them. Waldheir v. Railroad, 71 Mo. 314. (3) The court erred in giving instruction numbered 2, asked by plaintiff. This instruction was erroneous: (a) Because it allowed plaintiff to recover if she was injured by the negligent or careless closing of the elevator door by defendant's servant. This was error because all the evidence showed that the closing of said door and starting of said elevator did not cause any injury to plaintiff, but that the injury was caused after the elevator began to ascend. It is erroneous to give an instruction where there is no evidence upon which to base it. . Stone v. Hunt, 114 Mo. 66, 21 S. W. 454; State v. Hope, 102 Mo. 410, 14 S. W. 985; Evans v. Interstate Co., 106 Mo. 594, 17 S. W. 489; State v. Brown, 145 Mo. 680, 47 S. W. 789; Wilkerson v. Eilers, 114 Mo. 245, 21 S. W. 514; Yarnell v. Railroad, 113 Mo. 570, 21 S. W. 1; Woods v. Campbell, 110 Mo. 572, 19 S. W. 813. (b) Said instruction is erroneous because it allows plaintiff to recover for negligence on the part of defendant's servant in reversing the elevator. No such negligence was pleaded by the plaintiff and as she made several specifications of negligence in the petition, she was limited to them. McCarty v. Hotel Co., 144 Mo. 397, 46 S. W. 172. (4) The court erred in giving instruction numbered 3 at the instance

·of plaintiff. This instruction is erroneous because the plaintiff did not allege that the injuries to her were due ·to any negligence on the part of the defendants in connection with the reversal of the elevator. The plaintiff made several allegations of negligence in her petition and was limited to them. Chitty v. Railroad, 148 Mo. 64, 49 S. W. 868.

*John E. Eggers* and *Hainer & Hodgdon* for respondent.

(1) Defendants' demurrer to the evidence was ·properly overruled. To authorize or render permissible ·the sustaining of a demurrer to the evidence, the evidence must not merely be weak, but in fact there must ·be no evidence. Furthermore, as defendants did not ·stand on their demurrer to the evidence, but put in their ·evidence, the demurrer to the evidence will not be considered here. Routsong v. Railroad, 45 Mo. 236; Bowen ·v. Railroad, 95 Mo. 275, 8 S. W. 230; Lee v. Knapp & Co., 155 Mo. 610, 56 S. W. 458. (2) The instructions given at request of plaintiff correctly state the law under the pleadings and the evidence in the case. (a) Instruction numbered 1 correctly states the duty of defendants in the carrying of passengers in elevators; and also correctly states the qualifying effect of contributory negligence as well as the rule regarding the weight of evidence. Becker v. Lincoln & Co., 174 Mo. 246, 73 S. W. 581; Kelly v. Transit Co., 95 Mo. 284, 8 S. W. 420. ·(b) Instruction numbered 2 is a correct statement of the law. If defendants' servant negligently closed the ·elevator door on plaintiff's dress, and when he discovered this fact the operator reversed the elevator, hoping thereby to deliver or save plaintiff from her perilous position, then the law is correctly stated in the instruction. The proximate cause of plaintiff's injury was the negligent closing of the door on plaintiff's dress; what followed was only the natural sequence of this prime

negligent fact. Burger v. Railroad, 112 Mo. 244, 20 S. W. 439; Nagel v. Railroad, 75 Mo. 661; Hanlon v. Railroad, 104 Mo. 389, 16 S. W. 233. If the negligent act of closing the door on plaintiff's dress was a sufficient antecedent for the immediate subsequent events terminating in the injuries of plaintiff, then the instruction was a correct statement of the law; and the evidence conclusively demonstrates that the door closing and holding fast plaintiff's dress was the proximate and efficient cause for what immediately followed. Morrison v. Railway, 27 Mo. App. 433; Boggs v. Railroad, 18 Mo. App. 274. (3) Plaintiff at the time of the receipt of the letter was confined to her bed, and did not know the extent of her injuries. Even a formal release executed under such circumstances will not bar plaintiff from recovering additional damages when the true nature of the injuries become known. Arnett v. Railroad, 64 Mo. App. 373; Wilcox v. Railroad, 111 Fed. 435.

STATEMENT.

The defendants are a firm of retail merchants in the city of St. Louis. Plaintiff was injured in an elevator accident while in their store as a customer and on an elevator used to carry passengers to the different stories of the building. The accident occurred as the elevator descended from one of the floors; the evidence is contradictory as to which one, nor is the fact material. The elevator runs in a shaft. Each floor of the building has a sliding door attached to the floor and detached from the elevator, but opening into the shaft, and affording an entrance to and an exit from the elevator car. The car itself has an opening or doorway in the south side about three feet wide. When the car stops at a floor its doorway is immediately opposite the sliding door; which is pushed back for passengers to go in and out of the car and closed before the car starts again. The testimony for the plaintiff is that just as she entered the elevator

the youth who operated it told her to step back from the door, but instantaneously, and before she had time to step back, closed the door and started the elevator downward. It immediately appeared that her dress was fastened at the floor they were leaving; for when the car had descended about four feet the dress stretched taut and plaintiff was lifted from the floor of the car and suspended between the floor and the top. The car was about seven feet high, and if it had descended three feet further plaintiff would have been struck by the roof of it and, in all probability, killed or seriously injured. The operator perceived her peril and reversed the movement of the car, thereby causing it to shoot upward. The sudden upward movement threw the plaintiff's left leg through the open doorway of the car and it was caught between the floor of the car and the ceiling beneath the story it approached in rising; the same story it had left. The elevator operator gave this account of the accident:

"When I descended about four feet I noticed Miss Hensler was caught and quickly reversed the elevator on the up, and the elevator—it was too short a distance for the elevator to go slow and it went up quickly, and her leg was caught between the under portion of the floor and the upper portion of the elevator. . . . Why, I could never have stopped the elevator in time to save her from instant death. I couldn't stop the elevator in time; so there was only one way and that was to quickly reverse the elevator. . . . Well, after I left the third floor, I descended about the distance of four feet, and I noticed Miss Hensler's dress was caught and I quickly reversed the lever on the 'up,' and in going up the jolt was too quick; it was too great for the engine of the elevator and it shot up a little swifter than it usually ought to if you would run the elevator right; and in going up it threw her leg out and her leg was caught between the upper portion—well, you can say the portion of the ceiling and the upper portion of the elevator, and it was drawed through. It was drawed through, and when we

got to the third floor, why her leg was out by that time."

The resultant injury was a compound fracture of the limb below the knee. Defendant sent plaintiff to a hospital and paid for her board and treatment until she was discharged. Some of the testimony tends to prove the elevator was at the fourth floor instead of the second, as plaintiff swore, and that in the teeth of warnings, she persisted in standing close to the open entrance; in conseqence of which imprudence her dress caught at the third floor.

Negligence is charged against defendant in the petition as follows:

"The plaintiff states that the defendants, unmindful of their duties in the premises, failed to carry plaintiff well and safely between said floors heretofore mentioned in this; that as plaintiff was standing in said elevator, defendants' agent, without fault on plaintiff's part, carelessly and negligently suddenly closed the door of said elevator so as to catch said plaintiff's dress in the door and entangle it in the wheels of the elevator, which said wheels were carelessly and negligently exposed and uncovered; and defendant's agent then started said elevator before said dress was disentangled from said door and wheels, whereby plaintiff was thrown with great force and violence against the side and top of said elevator, whereby plaintiff was mangled, bruised and greatly injured, her leg was broken," etc.

The following letter was offered by defendants and excluded:

"St. Louis, February 2nd, 1901.
"Miss Mary Hensler,
"Care of St. Luke's Hospital, City.
"Dear Miss Hensler:

"Referring to the accident that befell you at our plant some time ago, we beg to state that as a matter of generosity we have for some time been paying the expenses of your room, board, nurses and physician. These expenses we can assure you are very considerable. We

have done this with pleasure and are willing to contribute to pay all these expenses until you are well, as a matter of favor, provided that your attitude toward us is friendly. We have received intimations, however, of late that look as though there is a prospect of your ultimately making some claim against us through an attorney. Of course, if this is your intention, we shall expect you to inform us at once, so that we can discontinue the large expenses which we are at present put to. Had we thought that you would possibly have maintained this attitude, we should not have done as much as we have done.

"At any rate, if you have any such plan for the future, we wish you would let us know at once, so that we may discontinue the expenses of hospital and physician right away. We are confident that you will deal with us in this matter in perfect frankness. In other words, if you have no idea of employing a lawyer and making further demand upon us, we are willing to continue your treatment until you get well. If, however, you have in mind the bringing of a claim against us later, we want to stop all expenses now.

"Please advise us at once and oblige,

"Very truly yours,

"Stix, Baer & Fuller,

" Per C. Stix."

These instructions were given for the plaintiff over defendants' objection:

"1. The court instructs the jury that it was the duty of the defendants and their agents and servants in the management of their elevator, to exercise reasonable care and precaution to prevent any injury to persons in or upon said elevator and any failure on their part to exercise such care and precaution would be such negligence as to make defendants liable for the injuries to plaintiff resulting from such negligence, unless the jury believe that the plaintiff's contributory negligence was the proximate cause of the accident; and in pass-

ing upon the question of negligence of the defendants' agents and servants and the contributory negligence of plaintiff, you should take into consideration all the facts and circumstances as proved by the evidence to have existed at the time when, and the place where the injuries occurred; and you should give to each fact and circumstance and to the testimony of each witness, such weight only as you may deem such fact, circumstance or testimony entitled to in connection with all the evidence in the case.

"2. If the jury finds that the plaintiff was injured by the negligent and careless closing of the elevator door by the defendants' servant, or by negligence or carelessness on the part of defendants' servant in reversing and returning the elevator after the plaintiff's dress was found to be caught, then the plaintiff is entitled to recover.

"3. If the jury finds that the contributory negligence of the plaintiff was the proximate cause of the catching of her dress in the elevator door, but finds that the injury to her person might have been prevented by a careful reversal and return of the elevator by the servant of the defendants after the dress was found to be caught, then the plaintiff is entitled to recover.

"4. By the term 'negligence' as used in these instructions is meant the want of that degree of care that any ordinarily prudent person would have exercised under the same or similar circumstances.

"7. By the term 'contributory negligence' is meant any negligence on the part of the plaintiff directly contributing to her injury; but such negligence on her part, if the jury finds the same to have existed, will not bar her right to recover, if defendants' agent or servant, after discovering the danger in which plaintiff was placed by her negligence, might have, by the exercise of ordinary care, prevented the injury to plaintiff."

The following instructions were given for defendants:

"5.  The court instructs the jury that there is no evidence of any negligence on the part of the defendants in connection with the equipment of the elevator.

"6.  The court instructs the jury that by the words 'ordinary care' as used in these instructions is meant such care as a person of ordinary prudence would exercise under the same or similar circumstances.

"8.  The court instructs the jury that the burden of proof is upon the plaintiff to prove that the injuries complained of by plaintiff were due to negligence on the part of the defendants, and the plaintiff in order to recover, must prove this by the preponderance or greater weight of the evidence."

These instructions were requested by defendants and refused:

"A.  The court instructs the jury that in order to find a verdict in this case each and every one of your number must agree to said verdict.

"B.  The court instructs the jury that if you believe from the evidence that the plaintiff was guilty of a failure to exercise ordinary care which directly contributed to cause her injury, then you will find for the defendants.

"C.  The court instructs the jury that the plaintiff is not entitled to recover in this case unless you find from the evidence:

"First: that the man in charge of the elevator of defendants was guilty of negligence that contributed directly to plaintiff's injuries; and

"Second: that the plaintiff herself was not guilty of any negligence that directly contributed to cause any injuries complained of."

Verdict and judgment were entered for the plaintiff, and defendants, who had saved exceptions to all adverse rulings, appealed.

GOODE, J. (after stating the facts).—1.  Persons who operate elevators for the use of the general public

Hensler v. Stix et al.

in stores and other buildings, are treated as common carriers of passengers and held to the exercise of the highest practicable care, and such as prudent men use in operating elevators, to prevent injury to passengers. [Lee v. Knapp, 155 Mo. 610, 56 S. W. 458; Becker v. Lincoln, etc. Co., 174 Mo. 246, 73 S. W. 581; Luckel v. Century Bldg. Co., 177 Mo. 608, 76 S. W. 1035.] It is the duty of a passenger on an elevator, and, hence it was plaintiff's duty, to use ordinary care to keep from getting hurt. [Becker case, loc. cit. 250.] The latter proposition was declared by the trial court; but the defendants were not held responsible by the instructions, for slight negligence on the part of their employee in charge of the elevator, as they should have been. This error affords defendants no ground of complaint, but is noticed because the case may be retried.

2. The petition contains an averment that the operator started the car before plaintiff's dress was released. That averment is said to be no statement of an independent act of negligence or separate cause of action, because it is not charged that the elevator was started negligently. Neither the word "negligently" nor any of similar import is used as descriptive of the act of starting. Nevertheless, a cause of action might be founded on the starting of the elevator when the operator knew, or, by using due care, could have known, plaintiff's dress was caught in the door. The operator stood right by the door and had a good chance to observe that her dress was caught. It was his duty to use great care to have the passengers in safe positions before he moved the elevator. But the instructions authorized no verdict for the plaintiff on a finding that the elevator was carelessly started from the landing; therefore, any fault in the allegation about starting is immaterial. If the negligence in that regard is to be relied on as a separate ground of recovery, the averment about it should be completed by the addition of the fact that the op-

erator knew, or ought to have known, her dress was
caught when he started the machine.

3. Plaintiff's pleading does not fit the facts dis-
closed by the evidence in all respects. The negligent
acts mentioned in the petition as the cause of the casu-
alty are, first; closing the door on plaintiff's dress so
that it became entangled in the wheels of the elevator;
second, carelessly leaving the wheels exposed, and,
third, starting while plaintiff's dress was fastened.
The petition avers that by those acts plaintiff was
thrown against the top and side of the elevator and in-
jured. Plaintiff was not injured in that way; but, as
all the evidence shows, by her leg getting caught be-
tween the floor of the elevator and the edge of the ceil-
ing of one of the stories of the building. Neither did
exposed wheels have anything to do with the casualty;
nor was there any proof that the wheels of the machin-
ery were exposed.

Counsel for defendants insist the accident was due
proximately to reversing the elevator, thereby causing
it to ascend again; and not to its descent, or exposed
wheels, or closing the door on plaintiff's dress; further,
that the petition says nothing about the reversal of
the movement of the elevator and, therefore, plaintiff
could not recover on her pleading, which specified only
acts of negligence that in no way contributed to the ac-
cident. The conclusion is deduced that the court should
have directed a verdict for the defendants. When an-
alyzed the above argument is found to resolve itself in-
to the proposition that there was a variance between
the petition and the proof, though the point is not pre-
sented in that form. All the evidence regarding the ac-
cident went in without objection and the question of
variance was never raised during the trial in the way
provided by the statutes. [R. S. 1899, sec. 655.] The
theory of defendants' counsel is that the court had no
right to instruct for a verdict for the plaintiff on a
finding of the jury that the downward movement of the

Hensler v. Stix et al.

elevator was negligently changed, because that fact is not counted on in the petition; and no right to instruct for a judgment in her favor on a finding of negligence in any other particular, because changing the course of the elevator was shown conclusively to have been the sole proximate cause of the accident; that in this dilemma the only proper ruling was to deny a recovery. There was abundant testimony to show defendants' employee carelessly closed the door on plaintiff's dress and at the same moment started the elevator. Now negligence in that respect was well pleaded in the petition and, therefore, the proof did not entirely fail to sustain one of the causes of action, or rather grounds of recovery, alleged. Hence, if the court had ordered a verdict for the defendants on the theory of total failure of proof, the ruling would have been erroneous.

4. Granting there was evidence that starting the elevator upward was the proximate cause of the accident, an inquiry arises as to whether the court properly submitted it as a ground for a verdict for the plaintiff when there was no allegation in the petition regarding the fact, but evidence about it had been received without objection. We discussed this question recently and held the statutes prescribed several lines of procedure in such a contingency, and that which line ought to be followed in a given case depends on the extent of the variance presented between the pleading and the proof. [Litton v. R. R., 111 Mo. App. 140, 85 S. W. Rep. 978.] The provisions of the code on this subject are clear and ample. If there is a total failure to sustain an allegation stating a distinct and independent ground of recovery, as where the fact proved negatives the one alleged, a failure of proof occurs instead of a variance, and the plaintiff's case, in so far as it rests on the unproved allegation, must fail. [R. S. 1899, sec. 798.] A party cannot sue on one cause of action and recover on another. [Chitty v. R. R., 148 Mo. 64, 75, 49 S. W. 868.] If a variance occurs it may be either material or

immaterial. If immaterial, the trial court, in the exercise of its discretion, may direct the facts to be found according to the evidence, or order an immediate amendment without costs. [R. S. 1899, sec. 656.] The professional eye likes to see pleadings and proof agree exactly and an amendment is preferable, but not imperative. To contend, as is sometimes done, that in no case of variance can the court instruct on the evidence, is to ignore the very words of the section of the statute last cited, which expressly authorize the court to give instructions according to the evidence unless the variance is material. What shall be deemed a material variance is prescribed in the code. It is one which had misled the opposing party to his prejudice. [R. S. 1899, sec. 655.] And in the code, too, is prescribed how it shall be made to appear a party has been misled. If the evidence does not correspond strictly to the allegations, it is the duty of the opposite party to satisfy the court by affidavit that the discrepancy is harmful to him; whereupon the court may order the pleading amended on terms. [R. S. 1899, sec. 655,] Now, during a trial a party may object to evidence when it is offered, on the ground that it is irrelevant to the issues; or he may raise the question of variance after it is introduced. If he does neither, and the discrepancy between the allegations and the evidence does not amount to a failure of proof, we fail to see how the trial court can be denied the right to instruct on the evidence without expunging certain provisions of the statutes. This doctrine has been declared repeatedly by the courts, though not without inconsistent decisions. [Fisher, etc., Co. v. Realty Co., 159 Mo. 562, 566, 62 S. W. 443; Heffernan v. Legion of Honor, 40 Mo. App. 605; Farmers Bank v. Assurance Co., 106 Mo. App. 114, 80 S. W. 299.] The real difficulty in practice is to say whether the evidence is so unlike the facts averred as to constitute a failure to prove the averments in their entire scope and meaning or merely constitutes a variance; and if there is any touchstone

for this problem we would gladly see it. Rulings on the question must be more or less arbitrary. In the present case the substance, scope and meaning of the cause of action stated is that the plaintiff was hurt by the negligent handling of the elevator by defendants' employee. Proof that the precise manner in which the hurt was inflicted was by reversing the elevator's movement carelessly would establish the gist of the petition (i. e., negligent operation of the machine) but would vary from the particulars of the petition. We hold it would be a variance and not a failure of proof. Our chief reliance for this ruling is the recent case of Chouquette v. R. R., 152 Mo. 257, 53 S. W. 897, in which it was held that a variance and not a failure of proof occurred. The petition alleged the plaintiff was thrown off a car in a rush of the passengers to escape a live wire, and the testimony showed the plaintiff went to the platform and jumped off. This general topic is well discussed in Pomeroy on Code Remedies (4 Ed.), sec. 447, et seq. We collected some instructive authorities in Litton v. R. R., supra, and reasoned about the principles which ought to control the decision in cases presenting various aspects.

5. Our main difficulty has been to decide whether there was any room for the inference that changing the direction of the elevator caused the injury. No doubt plaintiff would not have been hurt in the manner she was if the course of the machine had not been changed. But that is a very different proposition from saying that changing the course was, legally speaking, the proximate cause. If the car had been simply stopped at the point where it was turned upward, the mischief would have been averted. The operator swore it was impossible for him to stop it there without reversing the power— that is, throwing the lever back as far as it would go. No expert opinion on the subject was introduced; and though the evidence is very impressive that nothing

113 app—12

short of a complete change of movement would have caused a cessation of the downward movement in time to save plaintiff, we are unwilling to pronounce on the question as one of law. The correct answer depends on the speed and momentum of the car and the quickness with which it responded to a proper effort to stop it. Concerning those matters there is no testimony, except the statement of the operator that he could not stop soon enough without reversing the movement. It is certain that if the elevator had descended three feet more, the top would have struck plaintiff while she was in a position to be killed by the blow. The testimony is that she would have been killed instantly. The situation was one of extreme peril and called for instantaneous action on the part of the operator. He had to decide and act in a flash; and probably adopted the most effective expedient. He was bound to exercise high care in the emergency, considering the trepidation he must have felt when he realized plaintiff's peril. In his own statement he said the only way he could save plaintiff from instant death, was quickly to reverse the elevator; but said, also, that "in going up the jolt was too quick and the engine shot up quicker than it ought to if run right." In the Luckel case (177 Mo. loc. cit. 637) the Supreme Court held that although the passenger was caught in the door of the elevator by the operator's negligence, the passenger would have escaped injury but for the negligent lowering of the elevator on him; which act, therefore, was the cause of the injury. It was shown that after that elevator had ascended two feet, it was stopped. When it stopped the plaintiff was still unhurt and could have been extricated from his position of peril easily. But the operator let the elevator down until the top caught him, crushing his ribs and otherwise injuring him. Two facts in that case are obvious: that lowering the elevator was a negligent act and that it alone was the cause of the injury. In this case the elevator had

not stopped with plaintiff safe, before the operator turned its course upward. We have concluded it was for the jury to decide whether the operator handled the elevator with reasonable prudence after he saw the plaintiff's danger.

6. Though defendants' counsel insist the reversal of the elevator was the proximate cause of the accident, they by no means concede that this action was a negligent one. Their position seems to be that, whether negligent or not, it was the sole cause of the injury and plaintiff could not go behind it for a ground of recovery. In our judgment this position involves a misconception of what is meant in the law of negligence by the proximate cause of an accident. The expression "proximate cause" frequently signifies, not that act in a chain of causation nearest to the injury complained of, but the culpable act nearest to the injury. [Wharton, Negligence, sec. 88, 138; Shearman & Redfield, Negligence (5 Ed.), sec. 36; Emporia v. Schmilding, 33 Kan. 485; Chacey v. Fargo, 5 N. D. 173; Pastene v. Adams, 49 Cal. 87; Scott v. Shepard, 2 W. Blackst. 892; s. c., 3 Wils. 403.] When a person's conduct is negligent and brings another person into a position where damage is the natural outcome, the introduction of a non-culpable act between the original negligence and its mischievous result, will not prevent the original negligence from being treated as the proximate cause of the mischief, if it contributed to produce it, even though the intervening act was the immediate cause. This principle is illustrated by the cases we have cited. The incidents in one or more of them were the culpable acts of a municipality in letting a board in a sidewalk be loose, whereby injury resulted to a pedestrian by his companion stepping on one end of the board and causing it to rise. Stepping on the end of the board was the immediate, but not the proximate, cause of the accident. Now, in the present case it is palpable that someone, by catching plaintiff's dress in the door, or starting the elevator

while it was caught, had put her in danger before the elevator was reversed; and unless the reversal itself, or the way it was done, was a careless act and injured the plaintiff, the law will recur to the previous carelessness as the proximate cause of the injury. And this is reasonable; because if there was no negligence in the return of the elevator, the circumstances considered, then every subsequent incident, including the injury, was the natural result of the first careless act. But if the operator by catching plaintiff's dress in the door, or moving the elevator when he should have known it was caught, had put plaintiff into a position where he could not avoid hurting her, defendants ought not to escape liability because some subsequent careful act of the operator actually inflicted the hurt. Therefore we reject the conclusion that the upward movement of the elevator was the proximate cause of the accident, no matter whether it was careful or careless.

7.   Plaintiff herself could have been to blame for her injury in one particular only—that is, in not exercising ordinary care to keep her dress from catching in the door. Even if she was to blame for that circumstance, it was the duty of the operator to use care to see that she and the other passengers were safely placed before he started the elevator; and the defendants are responsible if he was remiss in the performance of that duty. Our conclusion regarding the possible causes of the accident is that the plaintif alone may have caused it by catching her dress; that the operator may have caused it either by closing the door on plaintiff's dress or starting the elevator when he knew, or ought to have known, her dress was caught; and that possibly he caused it by handling the elevator carelessly after discovering plaintiff's danger. As indicated above, we think the latter a weak theory; for though absolutely perfect management of the elevator might have averted the accident, it was hardly possible to manage it perfectly in the excitement and urgency of the moment.

If the operator carelessly closed the door on her dress, that incident may be treated as the proximate cause of the injury; for everything done after he closed the door would have proved harmless if her dress had been free. Neither starting the elevator down nor returning again, would have injured her any more than it did the eight or more other persons in the car. Moreover, the operator swore he closed the door and started the car at the same instant; and if her dress was caught by his action, all that followed could have been anticipated as a necessary consequence. If the plaintiff was not to blame for the catching of her dress, she was not to blame at all and no negligence of hers contributed to her injury.

8. The seventh instruction given for the plaintiff correctly says that by the term "contributory negligence" is meant, in this case, "any negligence on the part of the plaintiff directly contributing to her injury." Immediately after that definition, the instruction declares that "such negligence on her part" (that is to say, negligence on her part which directly contributed to the injury) "will not bar her right to recover, if defendants' agent or servant, after discovering the danger in which plaintiff was placed by her negligence, might have, by the exercise of ordinary care, prevented the injury to plaintiff." Taken as a whole that instruction was apt to impart an erroneous opinion about the effect on plaintiff's right to a verdict of a finding that she had been guilty of contributory negligence. It was misleading. The last clause was erroneous in requiring no more of the operator than ordinary care to save plaintiff after he discovered her peril. He was bound to use high care. Besides, in the circumstances shown, he might have been remiss, so as to lay his employers liable, by not discovering plaintiff's peril. As she could have put herself in peril in no way except by catching her dress, the instruction on this branch of the case will instruct the jury best by telling them that although they find plaintiff herself was to blame for her dress catching

in the door, yet if they also find the operator knew, or by exercising the high degree of care incumbent on him could have known, it was caught, in time to prevent the injury to plaintiff, defendants are liable. The first part of the instruction authorized a verdict for plaintiff in a given contingency, though she was found guilty of negligence which directly contributed to her injury. We deem that charge erroneous, as no evil feeling on the part of the operator was shown. It is not easy to refute the proposition that one who carelessly gets himself into a situation of danger and unwittingly remains there until hurt, contributes to his injury. But the initial negligence of a party, which brought him within range of harm from what another was doing, is regarded often as having only remotely contributed to the accident; because none would have happened if the injuring party had done his duty. The principle of liability is that the duty of using caution not to inflict injury is owed to careless as well as careful people. I have no more right negligently to hurt a man who has carelessly gone where I can hurt him, than I have to kill a man intentionally who is trying to kill himself. In situations where the rule in question is applied, the conduct of the party exposed to risk does not release others from the duty of being careful of his safety, or lower the standard, or lessen the quantity of care required. But if his own conduct in exposing himself to peril by the act of another, or failing to avoid peril when he could, contributes to the injury he received and the other's negligence (not recklessness or willfulness) contributes also, the latter is not answerable. He is not answerable because the law refuses to compare the negligence of the parties or to attempt an apportionment of their respective influences in bringing about the result; not because defendant was released from the duty to be careful by the plaintiff's neglect. It is not contended in this case that the elevator operator was reckless in conduct or guilty of wilful wrong. Therefore plain-

tiff's right to recover notwithstanding her own negligence, may be determined most satisfactorily by answering the question of whether her negligence directly contributed to cause the accident—that is, was the proximate cause. Any negligence of which she was guilty, will not debar her unless it contributed to the injury; and it did not contribute, legally speaking (directly contribute) if subsequent to it the operator had a last clear chance to prevent harm by exercising high care. This doctrine finds application to cases wherein it appears the defendant saw the plaintiff's peril in time to save him and to those wherein, the circumstances considered, the defendant ought to have seen the peril in time. Hence, we hold in this case that if the operator saw, or by high vigilance could have seen plaintiff's dress was caught in time to prevent the harmful result, the defendants are answerable. There is an antinomy between the doctrines of contributory negligence and of discovered peril (or the last clear chance) that has resisted all attempts to formulate a theory adequate to indicate clearly in borderline cases which of the two doctrines should control the decision. Yet students of the subject realize that there are circumstances under which an injured party should recover damages, notwithstanding the fact that his own want of care had something to do with bringing about the injury by affording the opportunity for it to occur. The case in hand contains testimony to establish facts which the last clear chance rule fits. The vital facts in this connection are that the operator was charged with the duty to exercise unusual vigilance for plaintiff's safety and if she was guilty of negligent conduct which endangered her, such conduct did not continue until the instant her leg was broken nor could she, by her own exertions, escape the danger in which she had placed herself. Any negligence on her part must have occurred, if at all, before the elevator began to descend. By catching her dress, she was put in a position of danger; and if she

caused it to catch, she put herself in that position. But it is a reasonable inference that the operator, by using vigilance to see that his passengers were properly placed before starting, might have averted harm to the plaintiff from what he was doing (running the elevator) though her dress was caught. Had he looked to see if she was safe and, seeing she was not, held the elevator motionless until her dress was detached, all would have been well. And if this precaution could have been taken by the operator, then plainly plaintiff's negligence only remotely and not directly contributed to her injury, and it was unnecessary to tell the jury she might recover, if they found it directly contributed. The instruction should have presented in a concrete way, the rule of law regarding the right of a party who has carelessly exposed himself to peril to recover for an injury needlessly inflicted by another person. The general and abstract character of the first part of the seventh instruction went beyond the necessities of the case and was incompatible with the defense of contributory negligence.

9. The first instruction given for the plaintiff held the defendants responsible if plaintiff's injury was caused by any failure on their part to exercise care and precaution in managing the elevator—an erroneous view. Not any failure of duty by the defendants, but only such as there was proof of, should have been submitted to the jury as ground for a verdict in plaintiff's favor. Different acts of negligence were alleged in the petition and some of these were supported by evidence. Plaintiff's right to recover depends on satisfying the jury that defendants were guilty of one or more of those acts. [Allen v. Transit Co., 81 S. W. 1142; Lesser v. R. R., 85 Mo. App. 326.]

10. Error is assigned because of the exclusion of the letter defendants wrote plaintiff while she was in the hospital. The defendants received no reply to the letter in question and did not seek one or pursue the

matter further. They say that as plaintiff remained at the hospital at their expense after receiving the letter, she must be held to have accepted the proposition submitted. This proposition was that the defendants would continue to pay for her board and attention at the hospital provided she assured them she would make no additional demand on account of her injury. Arguing that plaintiff's conduct amounted to a tacit acceptance of their offer, defendants' counsel present the supposed acceptance as a settlement of the present cause of action. We will say no more on this point than that in our judgment there is no ground for the conclusion that plaintiff accepted the proposition or in any way released her claim. She made no response to the letter and defendants could not rest with the negotiation in that state and insist afterwards on a constructive assent by plaintiff. Besides, all the evidence went to show she was a minor when she left the hospital and incapable of entering into an accord and satisfaction. The court committed no error in excluding the letter.

The judgment is reversed and the cause remanded. All concur.