CLARENCE SCHULTZ ET AL., RESPONDENTS, v. HOME MUTUAL INSURANCE COMPANY, A CORPORATION, APPELLANT, JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, A CORPORATION, DEFENDANT.—139 S. W. (2d) 556.

Kansas City Court of Appeals. April 29, 1940.

*Cave & Hulen* and *A. D. Sappington* for appellant.

*Harris, Price & Alexander* and *R. E. Ausmus* for respondents.

BLAND, J.—This is a suit upon a policy of fire insurance. The case was tried before the court without the aid of a jury, resulting in a judgment in the sum of $3539.80 in favor of plaintiffs and against the defendant, Home Mutual Insurance Company. It has appealed.

The facts show that on March 5, 1936, plaintiffs took out a policy of fire insurance in the appellant company, a farmers mutual fire insurance company. Thereafter, on October 18, 1937, the policy was revived and increased. The policy then covered certain of plaintiffs' property, consisting of a dwelling house and other buildings upon their farm. The policy also covered furniture, farm implements and livestock. There were 15 items insured, the amount of insurance being specified as to each item. Among these items was horses and mules which were insured for the sum of $2500. There was a mortgage clause in the policy in favor of the defendant, John Hancock Life Insurance Company.

On December 18, 1938, while the policy was in full force and effect, a fire occurred, damaging two mules, killing eight others and causing other losses. The appellant offered to pay insureds the sum of $1135 in full settlement of the loss as to the mules, which plaintiffs refused as insufficient in amount, resulting in this suit.

The main point raised on this appeal involves the construction to be given a certain by-law of the appellant company, reading as follows:

"Members desiring insurance on livestock in this company should insure the full estimated cash value of such stock then owned by the assured; then, in case of a loss, this company will pay the full appraised value of any animal killed; and a failure to carry the full estimated cash value will give this company the right to adjust and pay for such stock upon an equitable basis, according to the amount of insurance carried, compared with the total estimated value of all stock owned at the time of any loss. In no case, however, shall the amount paid on any one animal exceed the amount specified in the policy to be paid on any one animal. Example: Own forty head valued at $1600; insure twenty head, valued at $800 and write $400 insurance. Practical demonstration of the above proposition as related to the last part of the clause: Total value $1600; insured value $400, or one-fourth of the total value. Lost steer valued at $40. As he only carried one-fourth of the total value, the assured would not be entitled to exceed on-fourth of the appraised value of any animal at the time of the loss. This company will pay no loss on any animal that is buried before being appraised by a representative of this company."

At the time the insurance was written the estimated value of the horses and mules then on hand was fixed at $2500, and insurance taken out on them in that amount. At the time of the loss the value of the horses and mules on hand was $3940. The damage to the two mules amounted to $187.20 and the value of the eight mules at their death was $200 each, or $1600.

Appellant's theory of the meaning of the by-law in question is best expressed by its own language, as follows:

"First: If the member insures the full estimated value of his stock, in case of a loss, the company will pay the full appraised value of the stock killed or damaged.

"Second: If the member does not have insured the full estimated value of his stock in case of a loss, the company will only pay that proportion of the full appraised value of the stock lost or damaged, which the amount of insurance carried bears to the total estimated value of all the stock owned by the member at the time of the loss.

"Third: That in no case shall the company pay more on any one animal than the amount specified in the policy.

"The by-law further proceeds to illustrate its application by means of an example in order to obviate any misunderstanding on the part of the member as to his rights. It explains, by way of example, that if the total estimated value of the stock is $1600 and the amount of insurance carried is $400, then in case of a loss the member is entitled to recover only one-fourth of the appraised value of any stock lost or damaged.

"In the case at bar the total estimated value on all the stock owned by the respondents at the time of the loss was $3940. The amount

of insurance carried was $2500. The respondents therefore were only entitled to recover that proportioin of the appraised value of the animals killed or damaged which the amount of the insurance carried ($2500) bears to the total estimated value of the stock at the time of the loss ($3940). To determine this proportion, the amount of the insurance carried ($2500) is divided by the total estimated value of the stock on hand ($3940) and the ratio is .635. The appraised value of the stock killed or damaged is conceded to be $1787.20, and that sum, multiplied by .635 is $1134.87, or giving the respondents the benefit of the fractions, it would be about $1135. Another method to arrive at this amount for which the appellant is liable under this by-law, is, to find the proportion which the value of the stock lost bears to the total estimated value of the stock on hand, and multiply that number by the amount of insurance carried. This method was used by the appellant in its letter (Defendant's Exhibit I). Either method will arrive at the same amount, which amount would be, giving respondents the benefit of fractions, $1135.''

We think appellant's construction of the by-law is an erroneous one. It seems plain to us that its meaning is that if the policy of insurance is written for the full amount of the estimated value of the livestock on hand at the time the policy is taken out (as was done in this case), and a loss occurs, insured is entitled to recover the full amount of the appraised value of the livestock lost within the amount of the insurance. If the policy is written for an amount less than the estimated cash value of the livestock on hand, then, in case of loss, the company is to be liable only for that portion of the appraised value of livestock lost which the amount of insurance carried bears to the cash value so estimated of the stock on hand at the time of the loss.

However, appellant contends that this construction of the by-law is an improper one because the by-law provision stipulates that the insurance must be carried on the full estimated value of the stock owned and does not provide merely that the member is to take out that amount of insurance in the first instance. Plaintiffs continued to carry the insurance at the full cash value as estimated at the time the insurance was taken out, which is all the by-law requires. The contention really amounts to the claim that the by-law requires insured to keep the livestock insured for their full value and failure to do so will limit the liability of the company. Nowhere in the policy is it stated that the member shall keep the livestock insured for its full value. Nothing is said in the example contained in the policy concerning a change in the valuation of the livestock between the time the policy is written and the time of the loss. Of course, the value of livestock fluctuates from day to day. The policy discloses no intention to require the insured to change his policy after every increase by birth or market price. According to the by-law, at the

time the policy is written insured has an option to insure his livestock for their full estimated value or less than their full estmated value. If insured desires insurance for their full estimated value he can obtain it and then if he suffers a loss he knows that his recovery will be the full loss or damage up to a certain sum. If he does not desire insurance for the full estimated value and takes out insurance for less than their full estimated value, then, his loss is settled in accordance with the example contained in the by-law. The court computed the amount of plaintiffs' recovery on our theory of the meaning of the by-law.

However, it is contended by the appellant that the claim for the loss has been compromised and paid. This contention is based on the fact that, under date of May 6, 1939 (12 days before this suit was filed) appellant mailed a letter to the plaintiffs' enclosing a check in the sum of $2835, a sum that it claimed was due for the entire loss, which included items other than the mules in question. It appears that this is the correct amount of the loss if it is to be paid under appellant's construction of its by-law.

There is nothing in the abstract to show when this check was received, but it was agreed at the trial that plaintiffs did not cash the check but notified appellant (prior to bringing suit) that they would not accept it in full settlement of their loss. Plaintiffs never returned the check. Under these circumstances, appellant claims there was an accord and satisfaction. We think this contention must be disallowed.

We are not called upon to decide whether the check could otherwise be considered as a payment of a conceded portion of a liquidated claim, the amount of the remainder being in dispute, and for that reason the check was not a sufficient consideration to support an accord and satisfaction of the disputed portion of the claim, for the reason that the check was not accepted as payment. Shortly after its receipt plaintiffs notified appellant they would not accept the check in full settlement of the loss and brought suit.

In Aldridge v. Shelton's Estate, 86 S. W. (2d) 395, 399, it is stated: "To constitute a valid accord and satisfaction, it is essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner. *It is equally essential that the creditor shall have accepted it with the intention that it should operate as a full satisfaction.*" (Italics ours.) [See, also B. F. Goodrich Rubber Co. v. Newman, 271 S. W. 1029; 1 C. J. S., pp. 476, 477, 478.]

In Pennetti v. National Acc. Soc., 72 S. W. (2d) 848, it appeared that on April 14, the company wrote insured that it was enclosing a draft for $25 in settlement of the loss. Plaintiff received the draft did not indorse or attempt to collect it. Suit was brought on May

6, 1931. The court said, l. c. 850: ''The institution of the suit was notice to the defendant that its offer of settlement was refused, and hence there was neither accord nor satisfaction.''

Hensler v. Stix et al., 113 Mo. App. 162, was an action for damages for personal injuries. The evidence showed that defendant was paying the expenses of plaintiff in a hospital. Defendant made plaintiff a proposition to continue to pay for plaintiff's board and medical attention in case she made no additional demand on account of her injuries, to which proposition plaintiff made no reply. It was held that evidence of this was not admissible for the purpose of showing a settlement of the demand although plaintiff continued in the hospital at defendant's expense.

The judgment is affirmed. All concur.