STAGG, Appellant, v. EDWARD WESTEN TEA AND SPICE COMPANY.

### Division Two, June 30, 1902.

1. **Negligence**: PLEADING: ELEVATOR: ORDINANCE: CAUSAL CONNEC-
TION. In an action for personal injuries charged to the master's
negligence in failing to provide a skillful elevator operator, as re-
quired by ordinance, there must be some causal connection stated
between defendant's failure to perform its duty and the injury done.
A failure to provide an operator of the skill prescribed by ordinance,
does not make the company liable for injuries resulting from plain-
tiff's husband's attempt to operate the elevator himself for his own
accommodation. And a petition which so charges does not state a
cause of action.

2. ———: ———: ———: ———: ———: CASE STATED. A city or-
dinance required users of elevators to employ operators of a pre-
scribed age and skill, but at the time of the accident in this case
the defendant had no elevator operator. Plaintiff's husband, who
was superintendent of the factory, knew there was no operator and
undertook to use it himself, without being requested so to do, but
did not withdraw his arm quick enough from the rope, which was
beyond the gate from him, and the ascending automatic gate
caught him under the arm, bore him to the ceiling, then let him fall
to the floor, and down the elevator shaft. *Held*, that there was no
causal connection between the failure to comply with the require-
ments of the ordinance and the accident, and, hence, the petition,
which bases plaintiff's right to recover on such failure, does not
state a cause of action. *Held*, also, that there being no allegation
of any defect in the machinery, and none that plaintiff's husband
was in the discharge of his duty, the petition states no negligence
on the part of the master.

3. ———: ———: DISCHARGE OF DUTY. The master is not liable for
injuries to his servant unless the servant was at the time in the
performance of some duty for which he was employed.

4. ———: SUPERINTENDENT: KNOWLEDGE. The general superintend-
ent of a factory is chargeable with knowledge that there is no op-

erator on the elevator, and if there is no allegation that he was not acquainted with the action of an automatic elevator gate, he will be chargeable with knowledge of its action also.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

*W. E. Fisse* and *Percy Werner* for appellant.

(1)   A failure to comply with the requirements of a city ordinance constitutes a breach of duty to the public for which one injured because of it may recover the damages sustained.   Drain v. Railroad, 10 Mo. App. 531; Skinner v. Stifel, 55 Mo. App. 15; Brannock v. Elmore, 114 Mo. 55; Murray v. Railroad, 101 Mo. 236; Dickson v. Railroad, 104 Mo. 501; Gratiot v. Railroad, 116 Mo. 450; Harmon v. St. Louis, 137 Mo. 494; Vogg v. Railroad, 138 Mo. 172; Graney v. Railroad, 140 Mo. 89; Dallemand v. Saalfeldt, 175 Ill. 310; Wendler v. People's House F. Co., 65 S. W. 740; Jackson v. Railroad, 157 Mo. 621; Hutchinson v. Railroad, 161 Mo. 263; Weller v. Railroad, 64 S. W. 141.   (2) The violation of the ordinance was the proximate cause of the accident in question.

*Seddon & Blair* and *Robert A. Holland, Jr.,* for respondent.

(1)   The position of the defendant is that, assuming that it did violate said ordinance, it is not civilly liable to the plaintiff for the violation of said ordinance, but that the only punishment that can be visited upon defendant for such violation is the infliction of the penalty mentioned in the ordinance itself, to-wit, a fine to be enforced in the proper court.   A municipal corporation has no power to pass ordinances which shall impose upon one citizen any duty

toward another that may be the basis of a civil liability. Fath v. Railroad, 105 Mo. 537; Moran v. Pohlman, 134 Mo. 641; Sanders v. Railroad, 147 Mo. 411; Byington v. Railroad, 49 S. W. 876; Chouquette v. Railroad, 152 Mo. 257. (2) The only instance where a municipality by an ordinance can impose upon one citizen a duty not imposed by common law, and which can give rise to civil liability in favor of other citizens, is where, after an ordinance is passed, a citizen contracts with the city for a valuable consideration to obey the terms of said ordinance. In suits brought upon this theory, it is well established that the plaintiff must allege and prove not only the existence of the ordinance, but that the defendant has for valuable consideration agreed to obey the terms of said ordinance. Moran v. Pohlman, 134 Mo. 641; Sanders v. Railroad, supra; Byington v. Railroad, supra. (3) Even if there had been a violation of an ordinance in this case on the part of the defendant, the plaintiff was himself, as superintendent of defendant, a party to said violation, and, hence, could in no event recover from the defendant for the violation of an ordinance to which he himself was a party. Reed v. Railroad, 50 Mo. App. 507; Schaub v. Railroad, 106 Mo. 74. (4) The plaintiff does not allege that it was any part of his duty as employee of defendant to use said elevator in any fashion, or to use it in the way that he used it on the occasion in question. Where a servant sues his master, it is necessary in order to state a cause of action to allege that he met with his injury while engaged in the performance of the duties for which he was employed. Schaub v. Railroad, supra; Moran v. Brown, 27 Mo. App. 487. (5) Whatever view may be taken of the ordinance in question, the petition shows upon its face that the plaintiff, on the occasion in question, assumed the risk of operating said elevator. He was the superintendent in charge of the building and represented the master. He knew that there was no operator on

the said elevator, and, hence, in attempting to use it without such operator, he assumed the risk of any danger resulting from the absence of such an operator. Wood, Master and Servant, p. 675; Holloran v. Union Iron Fdy. Co., 133 Mo. 470; Steinhauser v. Spraul, 114 Mo. 551; Winkler v. St. Louis Basket & Box Co., 137 Mo. 394; Culbertson v. Railroad, 140 Mo. 61; Hurst v. Railroad, 163 Mo. 609; Higgins Carpet Co. v. O'Keefe, 25 C. C. A. 220; Corcoran v. Holbrook, 32 N. Y. App. 523; Kneisley v. Pratt, 148 N. Y. 372; Gillin v. Patten, 93 Me. 80; Spiva v. Osage Coal & Mining Co., 88 Mo. 68; Reynolds v. Hudlen, 32 Iowa 146; Goodrich v. Washington Mills Co., 160 Mass. 234; Porter v. Railroad, 71 Mo. 71; Cudahy v. Marcan, 19 Am. Neg. Rep. 670. (6) It appears from the petition itself that the proximate cause of the injury was not the fact that there was no operator in charge of the elevator, but that the plaintiff's husband, on the third floor of the building, attempted to start the elevator, which was on the first floor, so that it would ascend to the third floor, where deceased was standing. In order to recover in a case of this kind the plaintiff must prove not only negligence on the part of the defendant and injury to himself, but also that the said negligence on the part of defendant was the direct cause of plaintiff's injury. Stoneman v. Railroad, 58 Mo. 503; Holman v. Railroad, 62 Mo. 562; Reed v. Railroad, 50 Mo. App. 504; Stepp v. Railroad, 85 Mo. 229; Smillie v. St. Bernard Dollar Store, 47 Mo. App. 402; Hicks v. Railroad, 46 Mo. App. 304; Stanley v. Union Depot, 114 Mo. 606; Barkley v. Railroad, 96 Mo. 367.

GANTT, J.—This is an appeal from a judgment of the circuit court of the city of St. Louis, sustaining a demurrer to plaintiff's amended petition. Plaintiff declined to amend, and final judgment was rendered for defendant, and

plaintiff appeals.    The amended petition, omitting caption, is in these words:

"Plaintiff for cause of action states that she is a citizen and resident of the city of St. Louis, and State of Missouri, and is the widow of Warren L. Stagg, who departed this life in said city on July 13, 1898; that defendant is a business corporation organized and existing under the laws of the State of Missouri, and engaged in manufacturing and handling flavoring extracts, spices, etc.; that at the time hereinafter mentioned defendant was the occupant of a certain six-story building and premises with the appurtenances thereto belonging, known as No. 10 Cupples Block, and situated at the southwest corner of Tenth street and Clark avenue in the city of St. Louis, which building was at said time occupied by defendant as its principal place of business in the said city of St. Louis. Plaintiff states that in said building there was on July 13, 1898, a certain power elevator from the cellar to the top floor thereof, and used by defendant in the conduct of its said business. Plaintiff further states that at the said time there was in force in the said city of St. Louis an ordinance, known as section 1669 of the Revised Ordinances of the city of St. Louis, 1892, which provided as follows:

" 'The users of all power elevators shall employ a competent person to operate and run the same, who shall have a proper knowledge of all the parts of the machinery for the working of the elevator of which he may have charge, and who shall not be less than sixteen years of age, and of industrious and sober habits. Whenever it shall become evident to the inspector of boilers and elevators that any person employed in the above capacity is incompetent or untrustworthy, he shall notify the users of said elevator, who shall at once replace the incompetent employee with a qualified operator.'

"Plaintiff further states that under said ordinance it

became and was the duty of the said defendant to employ a competent person to operate and run said elevator, who had a proper knowledge of all the parts of the machinery for the working of the said elevator, and who was not less than sixteen years of age and of industrious and sober habits; yet that defendant not regarding its said duty, and while it was so using said elevator, to-wit, on July 9, 1898, wrongfully and negligently suffered said elevator to be run and operated without the employment of a competent person to operate and run same, who had a proper knowledge of all the parts of the machinery for the working of said elevator, and who was not less than sixteen years of age, and of industrious and sober habits as required by said ordinance.

"Plaintiff further states that the shaft or well-hole in which said elevator was run was partitioned from each of the various floors of the said building by means of a so-called 'safety elevator gate,' which consisted of an automatic sliding gate, about three feet in height and five feet in length, which moved in grooves fitted to receive it on either side of the entrance to said shaft, and which gates were raised from the floor to the ceiling of each story automatically whenever the elevator passed one floor to the next, dropping again into position as the elevator continued its ascent, and such gate was so raised with the same velocity and force as the moving elevator; that in order for a person standing on any floor to raise the elevator, it was necessary to reach out with the arm, over the top of said gate, into the corner of said elevator shaft, a distance of about three feet, and pull the wire cable rope by means of which said elevator was run and operated, and that owing to the position in which a person so attempting to raise the elevator necessarily assumed, and the great difficulty and uncertainty in regulating the speed thereof, he was placed in great jeopardy by reason of the movable gate over which his arm extended in raising or controlling the movement of said elevator.

"Plaintiff further states that the deceased, Warren L. Stagg, was at the time hereinafter named thirty-seven years of age, and was employed by defendant specially to take charge of its manufacturing department of flavoring extracts, and generally to have supervision over all the departments of said business other than those immediately conducted from the office of said business; that he had no proper knowledge of all the parts of the machinery for the working of the said elevator, and was ignorant of the nature and extent of the danger to which he was subjected in attempting to run said elevator; that on or about July 13, 1898, he being with the president of the defendant upon the third floor of said establishment, and desiring to descend to the first floor of said establishment, and there being no person employed by defendant whose special duty it was, or who had charge of running the said elevator, the said Warren L. Stagg, as he was permitted by defendant and was accustomed with the knowledge and consent of defendant, and was required, when he desired to use said elevator, to do, undertook to bring said elevator from below to the said third floor, by reaching over said gate and pulling the said cable rope, when the said elevator shot up with great force and speed, causing the said gate to move upwards with equal force and speed, which gate so ascending caught the said Stagg under the arm and carried him upwards with great force and violence against the brick partition extending over the entrance of said elevator, and between it and the said gate, and then dropping caused the said Stagg to fall onto the said third floor and thence into and down the said elevator-well to the cellar of the said establishment, whereby he sustained such injuries that from the injuries then and there received he died.

"Plaintiff says that the death of the said Warren L. Stagg was the direct result of the wrongful and negligent failure of the defendant to comply with the provisions of the aforesaid ordinance.

"Plaintiff says that by the death of her said husband she has lost his care, maintenance and support, and has had cast upon her the care and support of the minor children of said deceased, to her damage in the sum of five thousand dollars, for which plaintiff prays judgment with costs."

The demurrer alleged that the said petition did not state facts sufficient to constitute a cause of action, and prayed judgment for defendant.

I.    By reference to the petition it will be observed that it alleges that defendant is a business corporation engaged in manufacturing extracts, spices, etc.; that it occupied a six-story building; that in said building there was, on July 13, 1898, a certain power elevator from the cellar to the top floor thereof and used by defendant in the conduct of its business; the construction of and manner of operating the elevator is then described.

It is then alleged that plaintiff's husband "was employed by defendant specially to take charge of its manufacturing department of flavoring extracts *and generally to have supervision over all the departments* of said business other than those immediately conducted from the office of said business, and was ignorant of the nature and extent of the danger to which he was subjected in attempting to run said elevator; that on or about July 13, 1898, he, being, with the president of the defendant, upon the third floor of said establishment and desiring to descend to the first floor, and there being no person employed by defendant whose special duty it was or who had charge of running said elevator, her said husband, as he was permitted by defendant and was required when he desired to use said elevator, undertook to bring said elevator from below to said third floor by reaching over the gate and pulling the cable rope, when the elevator shot up and the automatic gate also ascending caught her husband under the arm and carried him against the

partition and dropped him into said elevator-well, whereby he was killed.

It is also averred that defendant had not employed an operator as required by the ordinance set out in the petition.

The city ordinance was adopted with a view to protect passengers and employees on elevators from dangers likely to and resulting from the management of elevators by incompetent operators, and provides for their removal, but it is obvious from reading the petition that the failure to have a competent operator on the defendant's elevator had no causal connection with the killing of plaintiff's husband.

Had defendant employed a boy under the requisite age or otherwise incompetent and an accident had occurred as the result of such incompetency, then the argument and authorities urged by plaintiff to the effect that a failure to comply with the requirements of a city ordinance constitutes negligence for which one injured because of such failure may recover damages, would be apposite, but where no operator is appointed and no injury results from operating the elevator by defendant or its agents, the ordinance has no bearing on the case, and it is unnecessary to discuss the power of the city to pass the same.

Under the allegations of the petition, viewed in their most favorable light for the plaintiff, the failure to have a regular operator on defendant's elevator did not cause or contribute to the death of plaintiff's husband.

Plaintiff's husband was the superintendent of the factory, knew there was no operator and undertook to move it himself, without being required to do so.

It is perfectly obvious that the elevator, which was properly constructed and adjusted and standing still at the first floor and fenced in, was incapable of doing injury to

plaintiff's husband.   And no injury was wrought by it until set in motion by plaintiff's husband.

Following the petition further it will be noted that there is no allegation of any defect in construction or failure to repair; no intervening agency of any other servant of defendant; no unexpected or unusual movement of the elevator when started as it was by plaintiff's husband, and no allegation that there was no other way of descending to the first floor.   We are thus brought to the true cause of the injury, the act of plaintiff's husband in raising the elevator himself.

We have then a case where the appliance is entirely safe when properly operated and a servant whose usual employment does not require him to use said appliance, voluntarily attempting to use it without any allegation that in so doing he was in the discharge of any duty to the master.   Under these circumstances the plaintiff's husband, the general superintendent of the company, attempted to operate this elevator but did not withdraw his hand and arm quick enough and the ascending automatic gate caught his arm and forced his body up against the ceiling and dropped it into the well of the elevator.   How can the master be charged with negligence upon this state of facts?

The general rule unquestionably is, that the master is not liable for injuries to his servant unless the servant was at the time in the performance of some duty for which he was employed.   [Barry v. Railroad, 98 Mo. loc. cit. 70; Schaub v. Railroad, 106 Mo. 74; Felch v. Allen, 98 Mass. 572.]

Now, this petition is utterly barren of any allegation that it was the duty of Mr. Stagg to use this elevator or to operate it, or that his business required him to use it.   Indeed, it is not even charged that it was a passenger elevator and designed for use as such, and if a servant undertakes to use machinery or instruments for purposes for which they were not designed, it is his own fault or folly if harm comes from it.

There are few useful appliances which will not cause

injury if improperly used, and if a servant without being required to do so by his employment, endeavors to use machinery which is entirely safe in the hands of those competent to manage and control it but of which he is ignorant, he can not call upon the master to respond if he is thereby injured, upon the plainest principles of justice and right. To make the master liable the servant must have been within the scope of his employment by the master and required to use the appliance.

But there is another view which we think is equally fatal to plaintiff's recovery. The servant in this case was the general superintendent. By virtue of his employment he was bound to be apprised of the failure to have an operator on the elevator. He knew the way in which the elevator was operated. It is not pretended that he did not know that when the elevator ascended, the automatic gate would necessarily ascend, and the risk of the gate catching his arm was apparent and obvious. It required no peculiar knowledge to understand this action of the gate, and when he attempted to do it he assumed the risk, one that in his case was voluntary and unnecessary and the master was not liable for the consequences. The allegation that he was not cognizant of *all* the dangers of the appliance does not negative a knowledge of the working of the automatic gate which was self-evident to any ordinarily intelligent man.

The circuit court correctly held that the petition did not state a cause of action and its judgment is affirmed. All concur.