# JARRETT W. CHAMLEE, Respondent, v. PLANTERS HOTEL COMPANY, Appellant.

### St. Louis Court of Appeals, January 24, 1911.

1. **MASTER AND SERVANT: Injury to Servant: Liability of Master.** A master is not liable for negligent injuries to a servant, unless the servant at the time was engaged in the performance of a duty within the scope of his employment.

2. ————: ————: **Scope of Employment: Jury Question.** In an action for injuries to an employee while operating a passenger elevator, caused by the fall of the elevator, evidence *held* to justify a finding that the employee was at the time acting within the scope of his employment.

3. ————: ————: **Assumption of Risk.** A danger arising from a defect in machinery, discoverable by ordinary care on the part of the master but which is neither known nor obvious to the servant, is not a risk incident to the employment of one engaged to operate the machinery or instruct others in so doing.

4. ————: ————: ————: **Rules of Decision.** The doctrine of assumed risk proceeds on the theory of the servant's assent; and he does not assent to a risk of which he had no knowledge, unless it be where the danger is so open and obvious that every ordinarily circumspect person must know of it.

5. ————: ————: ————: ————. A servant does not assume a risk arising from the master's negligence, except where an injury to him results from the particular mode in which he uses an appliance furnished him, and he assumes only such risks as are ordinarily incident to the employment.

6. ————: ————: ————: **Contributory Negligence.** A servant's knowledge of abnormal conditions pertaining to the

Chamlee v. Planters Hotel Co.

place in, or the appliance with, which he is to work, must be determined, under the law of contributory negligence, by reference to the usual standard of what an ordinarily prudent person might do under like circumstances.

7. ————: ————: ————: Facts Stated. An employee engaged in the line of his duty in operating a passenger elevator and instructing another in operating it, was injured by the fall of the elevator. The person he was to instruct had reported that the elevator was "dead." The employee did not know of the defect that caused the fall of the elevator, and employees about the elevator understood, by the expression "dead," merely that the power was off. *Held,* that the employee did not assume the risk of injury.

8. PLEADING: Variance. A party cannot sue on one cause of action and recover on another.

9. ————: ————: Immaterial Variance: Failure of Proof. When the cause of action, to which the proof is directed, is unproved in its entire scope, the court must direct a verdict for defendant; but it must not do so when the proof is merely defective or does not precisely conform to the averments in some particular way.

10. MASTER AND SERVANT: Injury to Servant: Pleading: Variance. Where, in an action for injuries to a servant while operating a passenger elevator, the allegations of the petition, that the servant was required as part of his duty to operate the elevator, and that the master negligently directed him to use the elevator, knowing its defective condition, were proved, and evidence, received without objection, showed that he was injured while instructing another, and that such act was in the line of his employment, the variance between the petition and the proof must be disregarded, under sections 1846 and 1847, Revised Statutes 1909.

11. EVIDENCE: Pleading: Variance: Waiver: Trial Practice. Defendant waives his right to complain of the reception of evidence going beyond the averments of the petition, where he fails to object and except to it.

12. APPELLATE PRACTICE: Exceptions to Instructions: Necessity of Objections. An instruction will not be reviewed, on appeal, where the party complaining did not object, but merely excepted, to the giving of the instruction.

13. MASTER AND SERVANT: Injury to Servant: Evidence: Meaning of Term Used. Where, in an action for injuries to an employee while operating a passenger elevator, caused by the fall of the elevator, plaintiff testified that, on being

155 App.—10

informed by a new operator that the elevator was "dead," he went into the elevator to ascertain whether it was "dead" by the misuse of the hand line, or whether it was out of order, evidence that the word "dead" was understood by the employees about the elevator to signify that the power was off was properly received; the mere fact plaintiff said he intended to see whether the elevator was "dead," in the sense suggested, or out of order, not showing he knew it was out of order.

14. EVIDENCE: Abandoned Pleadings: Binding on Parties, to What Extent: Instructions. An instruction offered by defendant, directing the jury that an abandoned answer of defendant introduced in evidence by plaintiff must be considered as a whole, and that admissions made in it by defendant were binding on defendant only as made, and no further, and that the parts of the answer against plaintiff were to be considered equally with other parts, was properly refused, because, although an abandoned pleading introduced in evidence by the adverse party must be considered by the jury as a whole, yet admissions made by the pleader and allegations against the interest of the adverse party are not of equal probative force, and because the instruction, to be entirely fair, should have told the jury the admissions in the answer against defendant were presumed to be true.

15. DAMAGES: Personal Injuries: Verdict for $6000 Not Excessive. An active, intelligent young man, of fair earning capacity, lost his foot through having it crushed. He was confined to the hospital for many months and suffered great pain of body and mind. His earning capacity was essentially diminished, and he was crippled for life. He would continue to suffer pain. *Held*, that a verdict for $6000 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams*, Judge.

AFFIRMED.

*Percy Werner* for appellant.

(1) The demurrers to the evidence should have been sustained. An employee cannot recover for injuries received while voluntarily performing a service for which he was not employed. Stagg v. Tea & Spice Co., 169 Mo. 489; Schaub v. Railroad, 106 Mo. 74; O'Brien v. Western Steel Co., 100 Mo. 182; Duvall v. Armour Packing Co., 119 Mo. App. 150; Leffler v. Brewing Ass'n, 127 Mo. App. 488; Lenk v. Kansas & Texas

Coal Co., 80 Mo. App. 374; 2 Labatt, Mast. and Ser., sec. 633; 4 Thompson Comm. on Law of Negligence, sec. 3907; McCue v. Starch Mfg. Co., 142 N. Y. 106; Daley v. Printing Co., 152 Mass. 581; Knox v. Stephens, 1 Victoria L. Rep. 102; Patterson v. Lumber Co., 145 N. C. 42; Burnett v. Roanoke Mills Co., 67 S. E. 30; McGill v. Granite Co., 70 N. H. 125; Taylor v. Lumber Co., 127 S. W. 962; Mfg. Co. v. Polk, 115 Ga. 542; Railroad v. Carr, 95 Ill. App. 576; Arzt v. Lit, 198 Pa. St. 519; Nelson v. Sanford Mills, 89 Me. 219, 224, 225. When plaintiff voluntarily left a place of safety and put himself in a place of danger, he lost all remedy against his employer for any injuries he sustained. Degonia v. Railroad, 224 Mo. 564; Young v. Railroad, 127 S. W. 19; Van Dyke v. Railroad, 130 S. W. 1. Plaintiff stands in this dilemma: If it was his duty to ascertain whether the elevator was out of order, he necessarily assumed the risks attending such an investigation. Hagar v. Terminal R. R. Ass'n, 207 Mo. 302; Henson v. Armour Packing Co., 113 Mo. App. 618; Roberts v. Telephone Co., 166 Mo. 370; Zeigenmeyer v. Goetz Lime Co., 113 Mo. App. 330; Bloomfield v. Worster Const. Co., 118 Mo. App. 254; Fugler v. Bothe, 117 Mo. 475; Archer v. Eldridge, 90 N. E. 525. If, on the other hand, it was not his business to make the investigation, the master is not responsible for the results of his voluntary act, outside of the scope of his employment. See authorities cited supra. (2) The first instruction given for the plaintiff is erroneous. (a) Instructions should be predicated on the evidence and the pleading, not on the pleadings alone where there is no evidence in support of their allegations. Marr v. Bunker, 92 Mo. App. 651; Young v. Railroad, 127 S. W. 19. (b) The instruction is vague and misleading as to the nature of plaintiff's employment. (c) The instruction ignores substantial testimony appearing in the record, testimony of plaintiff and his witnesses, as well as that introduced by defendant. Tracy v. Stock Yards Co., 87 Mo. App. 608. (d) The

last paragraph but one of the instruction is especially misleading, in that it leaves the jury to find that defendant ought to have known of the danger to plaintiff, and to have averted that danger, yet failed to do so, when the evidence shows that the engineer had, by forbidding any one to use the elevator until he could repair it, done all in his power to avert the injury to any employee, and that plaintiff was fully advised of this fact. Herbert v. Boot & Shoe Co., 90 Mo. App. 305. (e) An instruction which directs a verdict for the plaintiff must cover the whole case, and not single out only certain facts which may have a tendency to establish one side or the other. It should declare the law applicable to the facts contended for, and submit the case to the jury upon the theory of both parties. Bolles v. Railroad, 134 Mo. App. 696, 704. (3) The instruction asked by defendant as to the abandoned answer correctly declared the law, and its refusal was error. Slayback v. Gerkhardt, 1 Mo. App. 333; State v. Munson, 76 Mo. 109, 114; Tyler v. Hall, 106 Mo. 313, 323; State v. Knowles, 185 Mo. 141, 173; Clark v. Cordry, 69 Mo. App. 6; McMorrow v. Dowell, 116 Mo. App. 289; Clark v. Railroad, 179 Mo. 66; Kersting v. White, 107 Mo. App. 265. (4) The admission of testimony as to the meaning of the word "dead" was reversible error. (5) The verdict is for such an amount as to evidence prejudice on the part of the jury. And this prejudice is emphasized by the fact that the verdict for plaintiff is in the teeth of all the testimony of both parties.

*Earl M. Pirkey* for respondent.

(1) When a motion for a new trial is overruled, the losing party must both object and except if he desires the action on the motion reviewed, and unless he both objects and excepts the action of the trial court will not be reviewed. Williams v. City of St. Joseph, 118 S. W. 1180; Sheets and Day v. Insurance Co., 226 Mo. 617; State v. Miles, 199 Mo. 559; Carlisle v. Packet

Line Co., 82 Mo. 43; Gordon v. Gordon, 13 Mo. 315. (2) An objection to evidence that it is immaterial is no objection in law and will not be considered on appeal. State v. McKenzie, 128 S. W. 948. (3) When appellant claims there is no evidence to support a recovery the real evidence as well as all other evidence introduced in the trial court must be before the appellate court. Phelps v. Zinc & Lead Co., 218 Mo. 581. (4) Admissions against interest contained in a pleading are presumed to be true against the party making them. Kirkpatrick v. Metropolitan Street Ry. Co., 211 Mo. 81; Dowzelot v. Rawlings, 58 Mo. 75; Anderson v. McPike, 86 Mo. 293. (5) But what is asserted in defendant's answer in defendant's favor is not presumed to be true. Kersting v. White, 107 Mo. App. 282. (6) When a plaintiff introduces in evidence the testimony of defendant's witness given on a former trial, he is not thereby bound by such witness conclusions or statements of fact which are unfavorable to plaintiff. Phelan v. Paving Co., 227 Mo. 711. (7) An instruction undertaking to select certain portions of the evidence and commenting on the force and effect thereof is properly refused. Williams v. Stevens, 38 Mo. App. 164; Barr v. The City of Kansas, 105 Mo. 559; Connolly v. Railroad, 120 Mo. App. 652; State v. Mitchell, 129 S. W. 921. (8) The servant never assumes risks created by the negligence of the master. Jewell v. Powder Co., 127 S. W. 598; George v. Railroad, 225 Mo. 406; Obermeyer v. Chair Mfg. Co., 129 S. W. 209; Strickland v. F. W. Woolworth & Co., 127 S. W. 628. (9) Before a plaintiff can be adjudged guilty of contributory negligence in using an unsafe appliance negligently furnished by the master, the danger from using it must be so glaring and impending that no prudent person use it. Wendler v. House Furnishing Co., 165 Mo. 527.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of personal injuries received

through defendant's negligence. Plaintiff recovered and defendant prosecutes the appeal.

Defendant owns and conducts a hotel in the city of St. Louis and plaintiff was in its employ at the time of his injury as head ash-man and with other duties pertaining to the operation of an elevator. It appears that though plaintiff was originally employed for the purpose of cleaning up and removing ashes from the engine room of the hotel and given the title of head ash-man, he was also directed by his superior, the engineer, to operate the employees' passenger elevator in the absence of the regular elevator boy, and to see that such elevator was kept in operation. Plaintiff had been in the employ of defendant seven months at the time of his injury and had recently been charged with the duty of instructing one, Smith, the operator of the elevator referred to, who had been in the service but three days. The testimony for plaintiff tends to prove that as he was passing from the engine room toward the elevator he met Smith, the elevator boy, and Smith said to him, "the elevator is dead," whereupon plaintiff, together with Smith, went into the elevator and proceeded to operate it, we believe to ascertain the fact with respect to the complaint of Smith, communicated in the word "dead." By the word "dead," plaintiff inferred the elevator was motionless because the power was not properly applied through pulling the line as it should be and as Smith had been in the service for only a few days he thought possibly he had pulled upon the line which communicated the power when he should have pulled it down. The elevator is one of those which operates by hydraulic power furnished by means of water pressure in a large cylinder attached. The power is communicated for the purpose of moving the car through pulling a line which passes perpendicularly through same. It is in evidence that, for the purpose of moving the elevator upward, the line is to be pulled down, and for the purpose of moving it downward, the line is to be pulled

up, and plaintiff thought the car had refused to respond under the hand of Smith because the power was misapplied. Upon entering the car, together with Smith, plaintiff applied the power by properly pulling the line, and it proceeded properly from the basement to the third floor, where a stop was made for one of the chambermaids who came into the car with a bundle of linen and was conveyed to the ninth floor. After the chambermaid went out, the car proceeded without any trouble to the eleventh, or topmost, floor of the building. Plaintiff then reversed the car by pulling the line upward and it proceeded down as usual to the third floor where a stop was made for an employee en route to the basement for ice. After thus stopping at the third floor, plaintiff again applied the power and the car proceeded downward a few feet, when his attention was attracted by the rattling of the safety catches beneath, spoken of in the evidence as "dogs." These safety appliances are affixed beneath the elevator for the purpose of catching and holding it in the event of a fall. Plaintiff was advised that these appliances were slightly out of order and that they sometimes caught in the sides of the elevator shaft when they should not, but it appears no danger inhered in such defect, and he had been advised by the chief engineer how to dislodge them by the use of a Stilson wrench when such catching occurred. Upon noticing the rattling of the safety catches as though they were scraping on the sides of the elevator shaft, he returned the car a few feet upwards to the third floor for the purpose, we presume, of permitting the safety catches to readjust themselves, as it does not appear he did anything pertaining thereto except to move the car upward a few feet and then start it again on its downward course. It appears plaintiff properly applied the power by pulling the line, to the end of lowering the car to the basement after this stop was made, and when it was a few feet below the third floor, the car suddenly dropped to a point just below the halfway landing be-

tween the first and second floors of the building, at
which point it stopped and rebounded with great force.
Through the sudden stoppage and rebound of the ele-
vator, plaintiff was thrown from his position at the line
upon the floor of the car with one of his feet extended
so that it was caught and crushed beneath the door-
step of the elevator and the sill of the halfway landing
referred to.    There is no suggestion in the case that
plaintiff came to his injury primarily through the de-
fective safety catches but on the contrary it appears
conclusively the sudden fall and rebound of the car
were occasioned by the fact that the cylinder attach-
ment thereto was defective, in that it permitted an in-
take of air through the valves which occasioned such
a disturbance of the automatic arrangement as to pre-
cipitate the car forward and cause its rebound, notwith-
standing all effort to control it.    Such is the negligence
relied upon in the petition for a recovery, and it is es-
tablished by the proof beyond controversy.    It appears,
too, that defendant had full knowledge for some days of
the defective cylinder and valves and that plaintiff was
wholly unadvised with respect to that particular de-
fect.    Indeed, defendant's negligence in respect to this
matter is conceded, and it stands as an uncontroverted
fact in the case; but it is said, though defendant was
negligent as suggested, such negligence is not available
to plaintiff as a cause of action against it, for the reason
he was a mere volunteer, in that he was not performing
a duty for defendant at the time of his injury within
the scope of his employment.    There can be no doubt
of the general proposition that the master is not liable
to respond to his servant for injuries received through
his negligence, unless the servant was at the time of in-
jury engaged in the performance of some duty pertain-
ing to the master's business within the scope of the em-
ployment, and of course the principle obtains as well
with respect of those engaged in the operation of ele-
vators as in other cases.    [Stagg v. Edward Westen Tea,

etc., Co., 169 Mo. 489, 69 S. W. 391; IV. Thompson's Com. on Neg., sec. 3907.]

The argument for defendant is that the court should have directed a verdict for it, because as head ash-man and an elevator supply, plaintiff was not required to operate the elevator in the circumstances stated, and stepped aside from the line of his duty to volunteer to do so at the time of his injury. The argument and the principle invoked are put forward in a manner which evinces careful thought and extreme nicety, but it is clearly unsound on the facts of the case. Though it appears plaintiff was employed as head ashman and for certain general utility purposes, it appears, too, that he was instructed by the engineer, who employed him to run this particular elevator involved at such times as the regular elevator boy had gone to lunch and to see that the elevator was kept in operation. Both plaintiff and defendant's engineer, who employed him, recited the facts and the duties of his employment to the same effect and furthermore it appears from the testimony of these two witnesses that plaintiff was directed by the engineer to instruct or teach Smith, the new elevator boy, who had been in the service only three days, how to run it. Larkin, the engineer, said when plaintiff was not engaged in looking after the two men under him engaged in removing ashes, "It was his duty, by my instruction, to see that those elevators were kept in operation at all times, because we were having considerable trouble to get proficient men in the way of operators." The same witness said, too, that plaintiff was working over Smith, the elevator boy, because "If Smith should leave the elevator, I would hold Chamlee (plaintiff) partially responsible for keeping it in operation." Indeed, it appears throughout the testimony of plaintiff and his superior, the engineer, that plaintiff was to keep the elevators in operation not only when the elevator boy was out to lunch but at all times, and especially was he charged with the duty of instructing or

"breaking in" the new boy, Smith, and this of course implied that he should ascertain the difficulty with the elevator or run it for the purpose of demonstration on Smith's complaint that it was "dead," unless such word conveyed information or suggested to him that it was out of order and dangerous. It is entirely clear that the evidence tends to prove plaintiff was acting within the scope of his employment at the time he was injured.

But, it is said, though plaintiff was in the line of his duty, it appears from his own testimony that he knew the elevator was out of order and dangerous, for the reason Smith told him it was "dead" at the time he entered upon its operation. The argument is not that plaintiff's right of recovery should be denied on the theory of his contributory negligence as a matter of law, for it does not appear that the danger was threatening and obvious and that he acted rashly in encountering it, but the precise argument on this score is, that as plaintiff entered the elevator with the information it was "dead," he knew it to be out of order and therefore on entering the car with the purpose of investigating the trouble or testing the fact, he assumed the risk of so doing, if the duty to test the elevator was within the scope of his employment. It may be said of this argument, first, that it predicates on a false premise, for though Smith said the elevator was "dead," it does not appear plaintiff knew it was out of order. The matter is to be determined in the circumstances of the case and in view of the fact that Smith was but a beginner, possessed of limited information about the operation of the elevator. Plaintiff knew this and it appears, too, that he did not know of the defect which occasioned the car to misbehave and therefore presumed that Smith had made some mistake in pulling the line or attempting to apply the power. Moreover, it is proved in the case that the employees in the engine room and about the elevator understood the word "dead" to signify, not that it was out of repair, but merely that the power was

off. Of course, the mere fact that Smith said the elevator was "dead" would indicate no danger to one who understood from that word the power was off, but, on the contrary, it would suggest precisely what plaintiff conceived—that the inexperienced boy had made some mistake in pulling the line by which the power was communicated or discontinued. Of course, dangers that lie in defective machinery affixed for the purpose of furnishing the motive power of an elevator, which defect is discoverable by the exercise of ordinary care on the part of the master and is neither known nor obvious to the servant, is not a risk incident to the employment of one engaged to operate the elevator or instruct others in so doing. It may be that one engaged to ascertain the defect and repair it would take the risk as one incident to such employment in the circumstances of the case presented, if he should be injured while attempting to ascertain the difficulty. But if such be true, it is because of the implied assent to a risk which he must know inhered in the very task he undertook to perform and because of the mode and manner adopted by him in performing it. The principle is without influence on the facts in judgment, however, for the reason plaintiff was not engaged in the precise task suggested; for his duty of keeping the elevator in operation and instructing Smith neither forewarned him of a dangerous defect nor implied that he should make more than a casual examination in the usual way to ascertain why the car was "dead." In these circumstances, plaintiff's rights are not to be summarily determined as if he had undertaken by his contract of employment to perform the particular task of ascertaining and repairing the defect, which, of course, implies both knowledge and assent. The defective cylinder and valves, it appears, were well known to defendant and were wholly unknown to plaintiff and nothing in the case suggests that he might have ascertained the fact with respect to them by a casual inspection, if he were required to make one.

Plaintiff's knowledge of the defective safety catches is beside the case entirely, for they in no manner contributed to his injury, and the precise question for decision arises .on the argument that plaintiff assumed the risk of injury from the defective cylinder and valves, of which defect he had no knowledge. We believe in every case the doctrine of assumed risk proceeds on the theory of assent, and of course one may not assent to a risk of which he had no knowledge, unless it be in those cases where the danger is so open and obvious that every ordinarily circumspect person must know it. [Lee v. Railroad, 112 Mo. App. 372, 87 S. W. 12; Garaci v. Hill O'Meara Const. Co., 124 Mo. App. 709, 102 S. W. 594.] But, be this as it may, the rule of decision obtains in this state to the effect that, except in cases where the injury results from the particular mode or manner in which the servant uses the appliance (Harris v. R. Co., 146 Mo. App. 524, 124 S. W. 576), the servant will not be declared to have assumed a risk which arises from the master's negligence. Under this rule, the servant is said to assume only such risks as are ordinarily incident to the employment, and the matter of his knowledge about abnormal conditions pertaining to the place or appliances is to be determined under the law of contributory negligence by reference to the usual standard of what an ordinarily prudent person might do under like circumstances. [See Wendler v. People's House Furn. Co., 165 Mo. 527, 65 S. W. 737; Dakan v. Chase, etc., Merc. Co., 197 Mo. 238, 94 S. W. 944; Curtis v. McNair, 173 Mo. 270, 73 S. W. 167; Blundell v. Elevator Mfg. Co., 189 Mo. 552, 88 S. W. 103.] It is obvious plaintiff did not assume the risk.

Another argument advanced is to the effect plaintiff is not entitled to recover on the allegations of his petition for the reason he does not aver therein that it was any part of his duty to perform the service in which he was engaged at the time of his injury. It is true the proof shows the scope of plaintiff's duties to

be somewhat broader than the petition avers. It is
averred in the petition that plaintiff was employed
by defendant as a common laborer for the performance
of sundry service, a part of which was the occasional
operation of the elevator, and that defendant negligently
directed him to use the elevator when it knew of its de-
fective condition. The allegation with respect to what
plaintiff was doing at the time he was injured is to
the effect that he was engaged in the discharge of the
duty of his employment in operating the elevator for
the ordinary and usual purpose of carrying employees
from one floor of the hotel to another. The argument
is, that the petition does not aver plaintiff was engaged
in any duty pertaining to the instruction of Smith, the
elevator boy, or pertaining to his supervision in endeav-
oring to ascertain the cause of the elevator being "dead."
In so far as the petition avers plaintiff was engaged in
carrying employees from one floor of the hotel to anoth-
er, the allegation is proved, for the evidence discloses
such to be the fact. So this averment is not unproved.
But, true enough, the evidence goes quite beyond it and
shows plaintiff was engaged as well in the duty pertain-
ing to his supervision of Smith through demonstrating
that the elevator would operate under his management
after Smith said it was "dead." This evidence was re-
ceived without either objection or exception on the part
of defendant. It certainly does not disprove the cause
of action relied upon, for the cause of action asserted
is plaintiff's primary right to the exercise of ordinary
care on the part of defendant for his safety and defend-
ant's violation of that right by omitting to perform
the obligation which the law laid upon it. [Rice v. C.
B. & Q. R. R. Co., 153, Mo. App. 35, 131 S. W. 374; Pom-
eroy's Code Remedies (4 Ed.), p. 459, sec. 346, et seq.;
Litton v. C. B. & Q. R. Co., 111 Mo. App. 140, 149, 85
S. W. 978.] It is true a party cannot sue on one cause
of action and recover on another. [Chitty v. R. Co., 148
Mo. 64, 75, 49 S. W. 868.] And, of course, if a cause of

action to which the proof is directed is unproved in its
entire scope and meaning, the court should direct a ver-
dict for defendant but not so, however, when the proof
is deficient or does not precisely conform to the aver-
ments in some particular or particulars only.  [R. S.
1909, sec. 2021; Litton v. C. B. & Q. R. Co., 111 Mo. App.
140, 85 S. W. 978; Hensler v. Stix, 113 Mo. App. 162, 88
S. W. 108.]   Here it appears, instead of there being a
failure of proof or the case being one where the facts in
evidence disprove the allegation of the petition, all
averred were proved and even more.   And this, too, with-
out objection or exception on the part of defendant.   The
evidence tending to show plaintiff went into the elevator
at a time when it was in charge of the elevator boy and
that in so doing he was within the scope of his duties
which pertained to the supervision of Smith, though go-
ing somewhat beyond the averment of the petition, per-
tains to nothing more than a detail relating to his cause
of action and at most could present nothing more than
a question of variance.   The statute commands in re-
spect to variances that—

"No variance between the allegation in the plead-
ing and the proof shall be deemed material, unless it
has actually misled the adverse party, to his prejudice,
in maintaining his action or defense upon the merits;
when it shall be alleged that a party has been so misled,
that fact shall be proved to the satisfaction of the court,
by affidavit showing in what respect he has been misled,
and thereupon the court may order the pleading to be
amended upon such terms as shall be just."   (Sec. 1846,
R. S. 1909) ; and further—

"When the variance between the allegation in the
pleading and the proof is not material, the court may
direct the facts to be found according to the evidence,
or may order an immediate amendment without costs."
(Sec. 1847, R. S. 1909.)

Though a slight but unimportant variance appears

in the proof made from the averment of the petition with respect to the duty plaintiff was performing at the time of his injury, it is obvious defendant was not misled thereby, for it appears he was within the scope of his employment. Even if it were more important, it should be disregarded on appeal, for besides omitting to make the affidavit as required by the statute, defendant omitted to object or except to the testimony when received. By the express statutory provision above quoted, it was the duty of the court to direct the facts to be found in accordance with the evidence so received, and defendant waived its right to complain on that score through omitting to object or except to such testimony as went beyond the averment. [Hensler v. Stix, 113 Mo. App. 162, 88 S. W. 108; Litton v. C. B. & Q. R. Co., 111 Mo. App. 140, 85 S. W. 978; Mellor v. Mo. Pac. R. Co., 105 Mo. 455, 16 S. W. 849; Chouquette v. So. Elec. R. Co., 152 Mo. 257, 53 S. W. 897.]

Defendant levels an argument against the instructions given by the court at plaintiff's instance, but it may not be considered, for the reason that though defendant excepted to the giving of these instructions, it does not appear it objected to the action of the court as well in so doing. The proposition has been recently decided by our Supreme Court in the case of Sheets v. Ins. Co., 226 Mo. 613, 126 S. W. 413, and under the Constitution it is the duty of this court to conform its rulings in all respects on any question of law or equity to the last decision of the Supreme Court on the subject. It is no doubt true that before that decision the profession generally understood an instruction given would be reviewed on appeal if an exception thereto appeared, even though an objection were not otherwise exemplified in the bill of exceptions. Be this as it may, and whatever may be our views on the subject, this court is without authority to overrule the proposition announced in the authority referred to but on the contrary is in duty

bound to conform its ruling to the same effect. We have heretofore considered the question and declined to examine the sufficiency of instructions given when no objection thereto appeared in the bill of exceptions though it did appear an exception was saved. These rulings were likewise based on the ruling of the Supreme Court in Sheets v. Ins. Co., supra, see Monroe v. United Rys., etc., 154 Mo. App. 39, 133 S. W. 645; Stevens v. Knights of Modern Maccabees, 153 Mo. App. 96, 132 S. W. 767. When the superior court of the state recedes from the proposition, we will do likewise, but until then the rule is to be enforced.

The court permitted the engineer and others employed about the elevator in the Planters Hotel to give testimony as to the meaning of the word "dead," employed with respect to the elevators there. It is said the word signified the power by which the elevator was operated had been discontinued or detached. It is argued this was error, for the reason that, whatever meaning the word signified when thus employed, it appeared from plaintiff's evidence he knew the elevator was out of order at the time he entered the same with Smith. Plaintiff said that when he was informed by Smith the elevator was "dead," he thought the hand line had been misapplied and went into the elevator to see whether Smith "had worked the hand line wrong, whether it was dead or not; to see whether it was out of order." Though plaintiff did say, among other things, that he went upon it to ascertain whether the elevator was "dead" by the misuse of the hand line or if it were out of order, we believe it is obvious that he and all others understood the word "dead" to mean no more than that the power was disconnected and the mere fact he said he intended to see whether it was "dead" in the sense suggested, or out of order, does not show that he understood the elevator was out of order. We see no error in the ruling of the court pertaining to this matter.

Plaintiff introduced defendant's abandoned answer, in which it admitted the elevator was out of repair at the time and that it knew of the fact but pleaded as well that plaintiff had full knowledge to the same effect and was therefore negligent in attempting to operate it in its known condition. This answer further averred that plaintiff went into the elevator as a volunteer when it was not part of his duties to do so, etc. On this feature of the case, defendant requested and the court refused, to instruct as follows:

"The court instructs the jury that the abandoned answer of the defendant, which has been introduced in evidence by the plaintiff, must be considered as a whole, and that the admissions which defendant has made in it, if any, are binding on the defendant only as made, and no further. And you are further instructed that such parts in said answer as are against the plaintiff, if any, are to be considered by the jury equally with such other parts."

It is argued the court should have given this instruction, for the reason defendant's abandoned answer, if introduced by plaintiff in evidence, was adopted by him *cum onere*. There can be no doubt of the general proposition that the answer so introduced in evidence should be considered by the jury as a whole, but nevertheless the court properly refused defendant's instruction to that effect for the reason it was misleading in that it employed the word "equally" in the concluding line thereof. Furthermore, the instruction, to have been entirely fair, should have told the jury the admissions contained in the answer against defendant were presumed to be true. But the real error in the instruction lies in the concluding portion thereof which goes to the effect that such parts of the answer as were against the interests of plaintiff, if any, are to be considered by the jury equally with those parts which contained admissions against the interests of defendant. While it was for

155 App.—11

the jury to consider the whole answer and all of its parts, it is not true that the portions thereof which averred plaintiff had full knowledge of the condition of the elevator and that he was a volunteer in the performance of the task at the time of his injury outside of his line of duty were to be considered of equal probative force against plaintiff's interest as were the admissions therein made by defendant pertaining to the negligence charged. The instruction tended to so direct the jury and was properly refused. [Kersting v. White, 107 Mo. App. 265, 266, 281, 282, 80 S. W. 730.] It would be a harsh rule, indeed, which would operate to bind plaintiff through statements made about his conduct by another equally with admissions made by the same party about his own conduct on any given question.

It appears plaintiff is a young man, bright, active and intelligent, of fair earning capacity and that his injury is not only permanent but severe. He lost the use of his foot through having it crushed by the elevator and was confined to the hospital for many months; suffered great pain of body and distress of mind. His earning capacity is essentially diminished by the permanency of the injury and he is furthermore disfigured and crippled for life. It appears that he will continue to suffer pain, etc. The verdict of $6000, in these circumstances, is not, in our judgment, excessive and it should be approved. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.